STATE of Tennessee, Plaintiff-Appellee,

v.

Clifton Virgil OGLE,
Defendant-Appellant.

Supreme Court of Tennessee,
at Knoxville.

March 5, 1984.

J. Andrew Hoyal, II, Asst. Atty. Gen., Nashville, for plaintiff-appellee; William M. Leech, Jr., Atty. Gen., Nashville, of counsel.

W. Zane Daniel, Steven Oberman, Knoxville, for defendant-appellant.

OPINION

BROCK, Justice.

In the trial court the defendant Ogle was convicted of the crime of arson and received a sentence of imprisonment of not less than five nor more than ten years in the State penitentiary. The Court of Crimi-

nal Appeals affirmed that conviction in a two-to-one decision, Judge Daughtrey dissenting.

We granted review to consider whether or not the record discloses such a violation of the rule stated in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) that the conviction cannot be allowed to stand, although the defendant did not claim the benefit of the *Bruton* rule in either the trial court or the Court of Criminal Appeals. We conclude that the record does show such a violation and that the conviction must be reversed and the case remanded to the trial court for a new trial.

It was the State's theory that the defendant Ogle, who owned a mobile home in Knox County, hired or procured his co-defendant and brother-in-law, Sammy Miller, and a juvenile, Rodney Horner, who lived next door to the mobile home, to go to the mobile home in the nighttime and set it on fire with the use of an accelerant, such as lighter fluid; that defendant Ogle, assisted by the juvenile, Rodney Horner, moved the defendant's furniture from the mobile home on May 28, 1980, during the daytime and that on the evening of that date co-defendant Miller and Horner, as directed by the defendant, proceeded in Miller's automobile, actually owned by defendant Ogle who permitted Miller the use thereof as his own automobile, to a point near the mobile home, parked the automobile and crossed through a field to the mobile home where at about 9:45 p.m. Horner and Miller, or one of them, entered the mobile home, splashed the accelerant throughout its interior and set it on fire; that Horner and Miller then fled from the mobile home on foot but were apprehended the next day.

Earlier on the date that the mobile home was set on fire, Deputy Sheriff Wright of the Knox County Sheriff's Department received a tip that the defendant's trailer was to be burned that night and he, in turn, notified the state fire marshall's office and that agency dispatched investigator Breeding to investigate. Officers Breeding and Wright then stationed themselves in the home of the mother of the juvenile Horner which was situated next door to the mobile home that was to be burned and, from that vantage point, observed the setting of the fire, although they were unable to apprehend the arsonists and were unable to identify either of them.

Following their apprehension, juvenile Horner and co-defendant Miller made confessions which were reduced to writing by the investigating officers. Each of the statements incriminated the defendant, Ogle.

Because he was a juvenile, Horner was not indicted. However, Horner was a witness for the defense at the trial of the defendants Ogle and Miller. In his testimony he repudiated his confession previously given to the officers and denied that defendant Ogle was in any way involved in the arson of his mobile home.

The confession of co-defendant Miller, however, was identified by the officers and was admitted in evidence without alteration and without objection from either Ogle or Miller.

At the conclusion of the State's proof, the defendant Ogle did move for a directed verdict of acquittal, asserting that the only evidence against him was "hearsay" and that the State's evidence was insufficient to go to the jury; however, at no time was the *Bruton* rule mentioned. Neither was a *Bruton* violation relied upon in defendant's motion for a new trial or in his appeal to the Court of Criminal Appeals. Nevertheless, Judge Daughtrey, in her dissent, took the position that the *Bruton* violation was so flagrant and so crucial to the State's case that it should be considered to be prejudicial plain error requiring a reversal.

In Miller's confession he stated that defendant Ogle asked him to drive the juvenile, Rodney Horner, to his mobile home on the night of May 28, 1980, a little after 10:00 p.m., the time at which the neighbors ordinarily retired for the night. In his confession Miller explained:

"I didn't receive any money for this. I did it as a favor for my brother-in-law

Clifton. And because I have been driving his car with my tags on it."

Although there is some corroborating evidence in the record, such as defendant Ogle's removing from his mobile home the furnishings on the day prior to the fire, it cannot be doubted that the principal evidence connecting defendant Ogle to this offense consists of the incriminating features of the Miller confession.

Miller did not take the stand at any time during the trial and, of course, was not subject to cross-examination.

The crucial nature of the Miller confession with respect to defendant Ogle's case is shown by the statement of the prosecuting attorney, made in argument, urging the court to deny the motion for a directed verdict. At that time, the prosecutor stated:

> "Now, as to Mr. Ogle. If there had been an objection to Mr. Miller's statement, I think the State might possibly have a problem with Mr. Ogle. However, there was no objection and Mr. Miller's statement came in. I think the court can consider that against Mr. Ogle. Any evidence that comes in without being objected to, of that nature, should be considered. I think the court, again taking the matter in the light most favorable to the State, the statement of Mr. Miller shows that Mr. Ogle was certainly involved in what was going on in the burning of this particular trailer."

■ *Bruton v. United States, supra,* laid down the rule prohibiting the use of a non-testifying co-defendant's statement which incriminates the defendant. Moreover, in *Roberts v. Russell,* 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968) the court ruled that the *Bruton* holding applied in state prosecutions and was entitled to retroactive application even if the impact of retroactivity should be significant, since the constitutional error presents a serious risk that the issue of guilt or innocence may not have been reliably determined.

■ Nevertheless, when the defendant who is incriminated by such a co-defend-

ant's statement fails to object at trial to the admission of that statement, his conviction may be reversed on that ground only if (1) the statement constitutes plain error, (2) the statement was an important part of the state's case, and (3) the objection was not intentionally waived for tactical purposes. *United States v. Miller,* 666 F.2d 991, 998 (5th Cir.1982).

■ Although, as a general rule, the appellate courts of this State do not consider issues that are not raised in the trial court, *State v. Pritchett,* Tenn., 621 S.W.2d 127, 135 (1981), plain error is a proper consideration for an appellate court whether properly assigned or not. *State v. Mackey,* Tenn., 553 S.W.2d 337, 340 (1977), *Davidson v. State,* 223 Tenn. 193, 443 S.W.2d 457 (1969). Rule 52(b), Tennessee Rules of Criminal Procedure, states that an error affecting "the substantial rights of the accused" may be noticed at any time "where necessary to do substantial justice." Since a *Bruton* violation raises a "substantial threat" to the right to confront the witnesses against him, *United States v. Bruton, supra,* such a violation clearly affects a "substantial right" and constitutes plain error which "went to the basis of fair hearing and trial ...." *Roberts v. Russell, supra.*

*United States v. Morales,* 477 F.2d 1309 (5th Cir.1973) is a case in which the defendant's conviction was reversed for plain error and remanded for a new trial because of a violation of the *Bruton* rule although no *Bruton* objection was raised at the trial. However, the court observed that the *Bruton* rule should only be applied when the non-testifying co-defendant's statement constitutes "a significant portion of the evidence of guilt," and that if "ample evidence was available to demonstrate petitioner's guilt without reliance upon his co-defendant's confession," the *Bruton* violation would be considered harmless error. *Ibid.* at 1315. In the case at bar, we have already pointed out the crucial effect of the incriminating statements contained in the non-testifying co-defendant's confession insofar as defendant Ogle is concerned. There can be no doubt that co-defendant Miller's statement incriminating defendant

Ogle was "the primary piece of evidence against the defendant," and, as such, was "powerfully incriminating." *United States v. Miller, supra,* at 998.

With respect to the question whether or not, in the instant case, the *Bruton* violation was not raised, for tactical reasons, we fully concur in the statement by Judge Daughtrey in her dissent:

"In the instant case, co-defendant Miller's confession clearly inculpated defendant Ogle, and it was obviously crucial to the case against Ogle. I cannot imagine any legitimate tactical reason for defense counsel's failure to object when an objection would have effectively destroyed the state's case."

It is certainly true that not every *Bruton* violation will require reversal under the plain error doctrine. Whether or not an appellate court should recognize the error and grant relief in the absence of an objection in the trial court must depend upon the facts and circumstances of the particular case. In this case we are satisfied that the *Bruton* violation should be recognized under the plain error rule and that this conviction should be set aside and the case remanded to the trial court for a new trial. Costs incurred in this Court are taxed against the State.

FONES, C.J., and COOPER, HARBISON and DROWOTA, JJ., concur.