# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs September 9, 2003

## STATE OF TENNESSEE v. MARCILLO ANDERSON

**Direct Appeal from the Criminal Court for Shelby County**
**No. 02-00660    Bernie Weinman, Judge**

---

**No. W2003-00013-CCA-R3-CD  - Filed January 13, 2004**

---

The appellant, Marcillo Anderson, was convicted by a jury of second degree murder and sentenced to twenty years as a Range One, Standard Offender. His release eligibility was classified as violent, requiring him to serve one hundred percent (100%) of his sentence. In this direct appeal, the appellant challenges the sufficiency of the evidence and the trial court's denial of a jury instruction on self-defense. We hold that none of the issues raised by the appellant warrant a reversal and affirm the conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOE G. RILEY, J., joined.

Brett B. Stein, Memphis, Tennessee for the appellant, Marcillo Anderson.

Paul G. Summers, Attorney General & Reporter; Helena Walton Yarbrough, Assistant Attorney General; William L. Gibbons, District Attorney General; and Michael Leavitt, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

Maurice Telford and the appellant spent a portion of the day on August 19, 2001, shooting dice at an apartment complex in Memphis. Mr. Telford had known the appellant for approximately eight years. During the dice game, Frederick Hill, a resident of the apartment complex, walked up to the appellant and Mr. Telford and asked if he could join in on the game. The appellant told Mr. Hill "No" and Mr. Hill replied, "Come on, let me shoot." The appellant continued to refuse, and the two started "tussling." Mr. Telford could not tell who started the altercation, but saw Mr. Hill put the appellant in a "choke hold" before finally letting him go. The appellant then smacked Mr. Hill.

The altercation broke up without outside intervention. Mr. Hill and the appellant left the area, going their separate ways, without saying anything to each other.

On August 20, 2001, at approximately 9:00 a.m., Mr. Hill visited his mother at her home, which was located close to his apartment complex. He seemed nervous, constantly walking around the house and looking out the windows. At one point, he took the phone out of his mother's bedroom and walked out the front door, around the house and then back inside through the kitchen door. While her son was outside, Mr. Hill's mother noticed a green Maxima automobile with tinted windows outside her house. Although the window to the car was cracked and she saw a man inside, she could not identify the driver. When Mr. Hill came back into the house, he sat down for a few minutes. He dropped and shook his head while he was sitting. Mr. Hill then told his mother he was going back to the apartment he shared with his girlfriend to fix their front door. Mr. Hill walked out the front door, got on a bicycle and rode off toward his apartment.

While on the way to his apartment, Mr. Hill encountered the appellant. Cleotria Norman, who worked at the apartment complex, was repairing a window on a nearby apartment when he heard an argument. Mr. Norman looked in the direction of the voices and saw Mr. Hill sitting on his bicycle with his hands on his handlebars. The appellant was pointing a gun directly at Mr. Hill. Mr. Norman heard Mr. Hill say, "Get the pistol out of my face" to which the appellant replied, "No, I'm going to shoot you." Immediately thereafter, the appellant shot Mr. Hill. After hearing the gunshot, Mr. Norman ran to call 9-1-1. While he was running he heard another gunshot. When Mr. Norman returned to the scene of the incident, Mr. Hill was laying on the ground.

Andre Nelson and David Meyer, two officers with the Memphis Police Department, were called to the scene of the shooting. When they arrived, Mr. Hill was laying face down on the ground next to the bicycle, gasping for breath. Mr. Hill's eyes then rolled to the back of his head, and he expired at the scene. The paramedics attempted to resuscitate Mr. Hill when they arrived, but their attempts were unsuccessful. No weapons were found near Mr. Hill's body. A baseball cap, a bicycle and two empty .9 millimeter shell casings were found at the scene.

An autopsy was performed on Mr. Hill by the Shelby County Medical Examiner, Dr. O'Brien C. Smith. According to his testimony, a .9 millimeter bullet entered the left side of Mr. Hill's chest, passing through his left lung, spine, spinal cord, right lung, and ribs. The bullet was recovered on the opposite side of Mr. Hill's body. Dr. Smith opined that the cause of death was a gunshot wound to the chest.

After hearing the evidence, the jury convicted the appellant of second degree murder. The trial court sentenced the appellant to twenty years as a Range One, Standard Offender at the conclusion of the sentencing hearing. On appeal, the appellant challenges the sufficiency of the evidence and the trial court's refusal to charge the jury with a special instruction on self-defense.

## Self-Defense Jury Instruction

The appellant argues on appeal that the trial court committed reversible error by denying his special request for a jury instruction on self-defense. Specifically, he contends that the "tussling" incident which occurred between the appellant and Mr. Hill on the day prior to the shooting along with the argument that took place before the shooting fairly raised the issue of self-defense such that a jury could infer that the appellant acted in self-defense in shooting Mr. Hill. The State counters that there is no evidence in the record to support the appellant's request for an instruction on self-defense.

The trial court has a duty to "give a complete charge of the law applicable to the facts of a case." State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986); see also Tenn. R. Crim. P. 30. "[The] defendant has a constitutional right to a correct and complete charge of the law." State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990).

Further, self-defense, if fairly raised by the evidence, must be submitted to the jury by the trial court, and the trial court must instruct the jury that any reasonable doubt on the existence of the defense requires acquittal. Tenn. Code Ann. § 39-11-203(c); State v. Bult, 989 S.W.2d 730, 733 (Tenn. Crim. App. 1998); State v. Shropshire, 874 S.W.2d 634, 639 (Tenn. Crim. App. 1993). In order to determine if self-defense is fairly raised by the proof, the court should consider the evidence in a light most favorable to the defendant and should draw all reasonable inferences flowing from the evidence. Id.

Tennessee defines self-defense as follows:

> A person is justified in threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. The person must have a reasonable belief that there is an imminent danger of death or serious bodily injury. The danger creating the belief of imminent death or serious bodily injury must be real, or honestly believed to be real at the time, and must be founded upon reasonable grounds. There is no duty to retreat before a person threatens or uses force.

Tenn. Code Ann. § 39-11-611(a). Thus, the question is whether the evidence presented herein fairly raises the issue of reasonable belief that "force [was] immediately necessary to protect against the other's use or attempted use of unlawful force" and whether there was an "immediate danger of death of serious bodily injury." Here, the undisputed eyewitness testimony indicates that the appellant shot Mr. Hill. There is no evidence that Mr. Hill was attempting to pull out a weapon. In fact, at the time of the shooting, Mr. Hill was unarmed and his hands were on the handlebars of his bicycle. There was no attempt by Mr. Hill to cause immediate harm to the appellant. The only evidence of provocation or use of force by Mr. Hill occurred the day prior to the shooting and was

witnessed by Mr. Telford. His testimony indicated that after the brief altercation in which the appellant "smacked" Mr. Hill and Mr. Hill placed the appellant in a "choke hold," the two parted ways without exchanging words. In the case herein, the jury should not have been instructed on the law of self-defense; the trial court properly denied the special instruction. This issue is without merit.

### Sufficiency of the Evidence

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779.

In order to convict a defendant of second-degree murder, the State is required to prove that the defendant knowingly killed another, believing his conduct would cause the result without further conduct on his part. Tenn. Code Ann. §§ 39-12-101(a)(2) and 39-13-210(a). Whether the appellant "knowingly" attempted to kill his victim is a question of fact for the jury.

> Knowing refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

Tenn. Code Ann. § 39-11-302(b).

Intent, which can seldom be proven by direct evidence, may be deduced or inferred by the trier of fact from the character of the assault, the nature of the act and from all the circumstances of the case in evidence. State v. Inlow, 52 S.W.3d 101, 104-05 (Tenn. Crim. App. 2000); State v. Holland, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993).

-4-

At trial, the jury found the appellant guilty of the second degree murder of Mr. Hill. The appellant argues that the evidence was insufficient to convict him of second degree murder and that the proper verdict was voluntary manslaughter. The State argues that the evidence "overwhelmingly" establishes the appellant's guilt. We agree.

The proof introduced at trial established by the direct, eyewitness testimony of Mr. Telford was that the appellant pointed a gun at Mr. Hill, who was unarmed and had his hands on his bicycle's handlebars. When Mr. Hill told the appellant to remove the gun from his face, the appellant replied, "No, I'm gonna shoot you." The eyewitness then saw the appellant shoot and kill Mr. Hill.

Based on the evidence, it was reasonable for the jury to conclude that the appellant was guilty of second degree murder. To the extent that the appellant claims that the "tussling" incident the day prior to the shooting "created in the . . . [appellant's] mind a state of passion that carried over to the next day" causing the appellant to kill the victim as a result of that state of passion, the jury rejected any such notion by finding the appellant guilty of second degree murder rather than voluntary manslaughter. The evidence showed that the appellant and Mr. Hill "tussled," that the appellant struck Mr. Hill last by smacking him and that both parties just walked away without saying anything further. The evidence supports the jury's finding that the appellant committed second degree murder.

<u>Jury Instructions for Second Degree Murder</u>

Although not raised by either party on appeal, we note that the appellant was charged with second degree murder, which requires the trial court to give a jury instruction on the definition of "knowingly." In the case herein, in regards to the second degree murder charge, the trial court instructed the jury that:

> Any person who commits second degree murder is guilty of a crime. For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:
> (1) that the defendant unlawfully killed the alleged victim;
> and
> (2) that the defendant acted knowingly;
> or
> (3) that the defendant acted either intentionally, knowingly, or recklessly.
> "Intentionally" means that a person acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result.
> "Knowingly" means that a person acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably

certain to cause the result. The requirement of "knowingly" is also established if it is shown that the defendant acted intentionally.

"Recklessly" means that a person acts recklessly with respect to circumstances surrounding the conduct, or the result of the conduct, when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

This court has acknowledged that second degree murder qualifies as a result-of-conduct (rather than nature-of-conduct) offense wherein the defendant, in order to be guilty, must be aware that his or her conduct is reasonably certain to cause death. State v. Page, 81 S.W.3d 781, 788 (Tenn. Crim. App. 2002) (interpreting State v. Ducker, 27 S.W.3d 889 (Tenn. 2000)). In Page, the appellant, who was drunk, admitted striking the victim with a baseball bat but contended that he had no intention to kill. The appellant was convicted of second degree murder. The trial court's instructions defined "knowingly" to include an appellant's awareness (1) that his conduct is of a particular nature, (2) that a particular circumstance exists, or (3) that his conduct was reasonably certain to cause the result. Page, 81 S.W.3d at 786. This Court granted Page a new trial where the appellant's mens rea was in dispute because the instructions improperly lessened the State's burden of proof by allowing the jury to convict on second degree murder based only upon awareness of the nature of the conduct or circumstances surrounding the conduct.

Given that the trial court's instruction on the definition of "knowingly" was erroneous in this case, we must now determine the appropriate standard of review. An "erroneous jury instruction, which misstates the applicable conduct element of an offense and lessens the state's burden of proof, is . . . subject to constitutional harmless error analysis." Id. at 789.

We recognize that in many, if not most, homicide trials, the mens rea jury instructions utilized in this case would be harmless error. If a victim is shot at point blank range with a twelve gauge shotgun while asleep, and the defense is the defendant was not the shooter, then the erroneous instruction would likely be harmless. In such a situation, the mens rea is not a disputed issue at trial. Similarly, if causation is not disputed in a homicide trial, the failure to instruct the jury on causation may well be harmless. See State v. Farner, 66 S.W.3d 188, 206 (Tenn. 2001).

Id. However, the defendant failed to present this issue in his motion for new trial. Generally, the failure to present an issue in a motion for new trial results in waiver. Rule 3(e) of the Tennessee Rules of Appellate Procedure provides that for appeals "in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, . . . or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived."

See also State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997) (holding that a defendant relinquishes the right to argue on appeal any issues that should have been presented in a motion for new trial). Whether properly assigned or not, however, this court may consider plain error upon the record under Rule 52(b) of the Tennessee Rules of Criminal Procedure. State v. Ogle, 666 S.W.2d 58 (Tenn. 1984). In order to review an issue under the plain error doctrine, five factors must be present: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the defendant must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. See State v. Adkisson, 899 S.W.2d 626, 641 (Tenn. Crim. App. 1994); see also Tenn. R. Crim. P. 52(b). An error in jury instructions on the conduct element of an offense will be plain when it cannot be classified as harmless beyond a reasonable doubt.

In the case herein, the appellant's counsel did make references to the appellant's state of mind by relying on the theory of self-defense. Counsel argued specifically that the facts were appropriate for either voluntary manslaughter or self-defense rather than second degree murder. In turn, the State made reference to the nature of the defendant's conduct and the circumstances surrounding his conduct in order to prove that self-defense was not applicable. The appellant's assertion of self-defense does not deny that he intentionally killed Mr. Hill; it is merely an attempted justification for an intentional killing. Voluntary manslaughter is defined in Tennessee Code Annotated section 39-13-211 as "the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." The facts of the case herein are distinguishable from Page, in that the appellant did not deny the intentional killing of Mr. Hill and the State focused, and its proof showed, that the appellant shot an unarmed victim who was sitting on a bicycle with his hands on the handlebars. The appellant's conduct and defense did not call into question whether his conduct was likely to produce death. The eyewitness testified that the appellant very clearly stated to Mr. Hill, "I'm gonna shoot you" immediately prior to shooting Mr. Hill. The only issues were whether the appellant acted in self-defense, and was thus, not guilty at all and whether the appellant acted from a state of passion produced by adequate provocation, rendering the crime one of voluntary manslaughter rather than second degree murder.

We therefore conclude that the trial court's failure to instruct the jury with the proper definition of "knowingly" as to the second degree murder charge was harmless error. See State v. Allen Lee Dotson, No. M2001-01970-CCA-R3-CD, 2002 WL 61670471 (Tenn. Crim. App. at Nashville, Oct. 21, 2002), perm. to appeal denied, Feb. 3, 2003. Accordingly, the judgment of the trial court with respect to the conviction of second degree murder is affirmed.

## Conclusion

After thoroughly reviewing the record before this Court, we conclude that there is no reversible error and accordingly, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE