IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 2, 2010

## STATE OF TENNESSEE v. JERRY PHILLIP HALEY

## Direct Appeal from the Circuit Court for Lauderdale County
### No. 8498      Joseph H. Walker, III, Judge

### No. W2009-01800-CCA-R3-CD  - Filed September 16, 2010

The defendant, Jerry Phillip Haley, was convicted by a Lauderdale County jury of aggravated rape, a Class A felony; aggravated kidnapping, a Class B felony; and aggravated criminal trespass, a Class A misdemeanor. The trial court sentenced him to serve an effective sixty-year sentence in the Department of Correction. On appeal, the defendant contends that: (1) the trial court erred in allowing hearsay testimony from the victim; and (2) the conviction for aggravated kidnapping violates due process in violation of *State v. Anthony* and *State v. Dixon*. Initial review of the record reveals that the defendant has waived both issues based upon his failure to raise them in his motion for new trial. Further review leads us to the conclusion that neither issue rises to the level of plain error. As such, the judgments of conviction are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and ALAN E. GLENN, J., joined.

Gary F. Antrican, District Public Defender, and David S. Stockton, Assistant Public Defender, for the appellant, Jerry Phillip Haley.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Julie K. Pillow, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## Factual Background

At approximately 4:00 a.m. on the day of the incident, the victim awoke to discover that the defendant had entered her home through a bathroom window. The victim had previously been asleep in her bedroom, and her three young children were asleep in separate rooms in the home. The defendant, armed with a screwdriver, approached the victim's bed and proceeded to hold her down while vaginally raping her. He repeatedly threatened her life while pressing the screwdriver into her neck and abdomen. Afterward, the defendant ordered the victim to go into the bathroom and bathe. The defendant did not initially accompany the victim into the bathroom but remained in the bedroom where he proceeded to remove the sheets from the victim's bed. While the victim was in the bathroom, she ran water in the bathtub but only pretended to bathe, as she knew that she had the defendant's sperm on her body. The defendant, at some point, did enter the bathroom and reminded the victim that she was not to go to the police. Thereafter, the victim heard the defendant exit the house through the backdoor. Prior to the time she awoke to find the defendant in her bedroom, the victim had never seen the defendant before. She stated that the defendant did not have permission to enter the home and that any sexual contact between the two was not consensual. She also stated that her cell phone was taken by her attacker.

After hearing the defendant leave, the victim proceeded to gather her children and leave the home. She called a friend, who met her at the hospital. Police were called and met the victim at the hospital. The victim was still visibly shaken and upset but was able to give police a general description of her attacker. After receiving treatment at the hospital, the victim was taken to the sexual assault center in Memphis where a rape kit was collected. Along with the victim's clothing and bed linens, the rape kit was sent to the Tennessee Bureau of Investigation (TBI) for testing. In the interim, police asked the victim to view a photographic lineup, and she selected Courtney Ricks as someone who looked similar to her attacker.

A sample of sperm was found on the victim, and the resulting profile was entered into the CODIS database. The sample entered matched that of the defendant, which had previously been entered into the system. After learning that the sperm found on the victim matched the defendant's DNA profile, officers located him in the Henry County jail where he was incarcerated on separate charges. Officers met with the defendant, and he denied having sex with a "white woman" in the victim's area. He did provide a DNA sample to officers, which was tested and verified as a match to the sperm found on the victim.

Based upon this information, the defendant was indicted by a Lauderdale County grand jury for aggravated rape, aggravated kidnapping, and aggravated burglary. A trial was held at which the victim and police officers testified to the above facts. In his defense, the defendant testified and called John Wallace, a friend whom the defendant had known for several years. Both testified that, on the day in question, the defendant called Wallace and

asked him to come to Ripley to pick up the defendant. After picking up the defendant, the two, along with Wallace's girlfriend, proceeded to a home, which the defendant believed belonged to Courtney Ricks, in order to purchase cocaine. The defendant further testified that Courtney Ricks informed him that his girlfriend was in the back bedroom and that she might have sex with the defendant in exchange for cocaine. According to the defendant, he went into the back bedroom of the home and found the victim, with whom he then engaged in consensual sex. Afterward, according to both the defendant and Wallace, the group left the home and went to a motel in Union City.

After hearing the evidence presented, a jury convicted the defendant of aggravated rape, aggravated kidnapping, and aggravated criminal trespass. He was subsequently sentenced to forty years, twenty years, and eleven months and twenty-nine days for the respective convictions. Additionally, the rape and kidnapping sentences were ordered to be served consecutively for an effective sentence of sixty years in the Department of Correction. The defendant filed a motion for new trial in which he challenged only the sufficiency of the evidence. The trial court denied the motion, and the defendant has timely filed an appeal with this court.

## Analysis

On appeal, the defendant has raised two issues for our review. First, he contends that the trial court erred in admitting hearsay testimony by the victim. Second, he contends that the conviction for aggravated kidnapping violates the due process protections set forth in *State v. Anthony* and *State v. Dixon*.

### I. Hearsay Objection

First, the defendant asserts that the trial court erred in allowing the victim to give hearsay testimony regarding what she had heard from unknown sources with regard to how to respond when threatened, *i.e.*, to comply with the aggressor's demands. He contends that he was deprived of an opportunity to confront these unknown persons who purportedly advised the victim how to respond to "that type of situation." The State responds that the defendant has waived review of this issue based upon his failure to include it in his motion for new trial. We agree.

As noted, in his motion for new trial, the defendant raised only the issue of sufficiency of the evidence. Tennessee Rule of Appellate Procedure 3(e) states, in pertinent part, that "in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." Tenn. R. App. P.

3(e); *see State v. Martin,* 940 S.W.2d 567, 569 (Tenn. 1997) (holding that defendant relinquishes the right to argue on appeal any issues that should have been presented in a motion for new trial). When an issue is raised for the first time on appeal, it is typically waived. *State v. Alvarado,* 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996). Nonetheless, whether properly assigned or not, we may address the issue in the event there was plain error on the part of the trial court under Rule 52(b) of the Tennessee Rules of Criminal Procedure. *State v. Smith,* 24 S.W.3d 274, 282 (Tenn. 2000); *State v. Ogle,* 666 S.W.2d 58, 60 (Tenn. 1984). In *State v. Adkisson,* this court established five factors to be applied in determining whether an error is plain: (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused must not have waived the issue for tactical reasons; and (e) consideration of the issue must be "necessary to do substantial justice." 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994) (citing Tenn. R. Crim. P. 52(b)). On the record before us, we are unable to conclude that any alleged error which occurred in the admission of the testimony rose to the level of plain error. In light of the overwhelming evidence against the defendant, we cannot reach the conclusion that consideration of any supposed error was "necessary to do substantial justice."

## II. *State v. Anthony*

Next, the defendant challenges his conviction for aggravated kidnapping. Although framing his issue as one of "sufficiency of the evidence," a reading of his argument clearly indicates that he is actually asserting a due process challenge pursuant to *State v. Anthony* and *State v. Dixon*. He contends that there was no evidence presented of further confinement or movement other than that necessary to complete the associated felony, *i.e.*, the aggravated rape. In its brief, the State has responded to the challenge by relying upon *State v. Samuel*, 243 S.W.3d 592 (Tenn. Crim. App. 2007), to establish that the evidence presented was sufficient to support the conviction. We would agree that the evidence, as presented, was sufficient to factually support the finding of each element of the conviction, as it was established that the defendant entered the victim's bedroom, pressed a screwdriver to her body, and forcibly held her down while raping her. However, as noted by the defendant in his reply brief, that is not the nexus of his argument as he does not challenge the establishment of the elements of the offense. As such, our review will address only the *Anthony* issue as raised by the defendant. However, as also previously noted, the defendant failed to include any issues in his motion for new trial other than a challenge to the sufficiency of proof with regard to the elements of the offense. No mention is made of a due process violation. Thus, we are again confronted with the issue of waiver pursuant to Tennessee Rule of Appellate Procedure 3(e). As such, the only way to reach the challenged issue is if error was committed which rises to the level of plain error. Based upon our analysis as set forth below, we conclude that it does not.

With regard to the issue in question, our supreme court has previously held that a kidnapping conviction violates due process if it is essentially incidental to the commission of another offense. *State v. Anthony,* 817 S.W.2d 299, 306 (Tenn. 1991). The court, in setting forth the standard to determine whether kidnapping was essentially incidental to the underlying offense, held that in order to establish a separate kidnapping conviction, it must be determined "whether the confinement, movement, or detention [was] essentially incidental to the accompanying felony." *Id.* at 305. The court, in *State v. Dixon,* 957 S.W.2d 532 (Tenn. 1997), clarified the standard and set forth a two-part test to determine whether a separate kidnapping conviction violates due process. *Id.* at 535. First, it must be determined if the movement or confinement of the victim was beyond that necessary to consummate the accompanying crime. *State v. Richardson*, 251 S.W.3d 438, 442 (Tenn. 2008) (citing *Dixon*, 957 S.W.2d at 535). The first prong of the test focuses on whether the movement or confinement was *necessary* to consummate the accompanying crime. *Id*. If it was, then a separate kidnapping conviction violates due process, and no further analysis is required. *Id*. If, however, the movement or confinement was beyond that necessary to consummate the accompanying crime, then the second prong must be addressed. *Id*. The second prong considers "whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm." *Id*. at 442-43.

Based upon this law, we agree with the defendant's assertion that the State was required to establish an additional movement or confinement other than necessary to complete the aggravated rape in order for the kidnapping conviction to stand. As indicted in this case, Tennessee Code Annotated section 39-13-304(a)(1) (2006) defines aggravated kidnapping as "false imprisonment, as defined in [section] 39-13-302, committed . . . [t]o facilitate the commission of any felony or flight thereafter." "A person commits the offense of false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." T.C.A. § 39-13-302(a) (2006).

Looking to the first prong of the two-part inquiry required by *Dixon*, we must determine whether there was additional movement or confinement in this case beyond that necessary to consummate the accompanying crime, *i.e.*, the rape. On the facts presented, we believe that the evidence does establish such additional movement or confinement in excess of the defendant's confining the victim to the bed during the act of rape. Following the forced intercourse with the victim, the defendant ordered her to go into the bathroom and bathe. While the defendant did not physically force the victim into the bathroom or initially accompany her, the record establishes that she was still under the defendant's control based upon the threats which had been made against her earlier. She was clearly being forced to act and move by the defendant at the point that she entered the bathroom. Thus, we conclude that the first prong of the test is satisfied as the movement or confinement was not necessary to

consummate the rape.

After reviewing the second step required by the analysis, we conclude that no due process violation occurred because the additional movement or confinement as discussed above was done to "lessen[] the defendant's risk of detection." It appears clear that the defendant ordered the victim into the bathroom to bathe for the sole purpose of destroying possible DNA evidence, as he was clearly aware that his sperm could be found on the victim's body. The defendant's intent is further established in this case by his taking of the victim's sheets with him. He was obviously aware of and trying to destroy possible evidence which could be used against him. The victim's ability to thwart the defendant's intent by only pretending to bathe and, thus, preserving the evidence which eventually resulted in the defendant's arrest, is not relevant to this inquiry. Based upon our analysis, no due process violation was established and, as such, both convictions may stand.

## CONCLUSION

Based upon the foregoing, the judgments of conviction are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE

-6-