# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### MARCH SESSION, 1998

FILED

July 2, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 01C01-9706-CC-00221 |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | WARREN COUNTY |
| VS. | ) | |
| | ) | HON. CHARLES D. HASTON |
| LAWRENCE RALPH, JR., | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Burglary of Automobile, Theft, |
| | ) | DUI, etc.) |

## ON APPEAL FROM THE JUDGMENT OF THE
## CIRCUIT COURT OF WARREN COUNTY

FOR THE APPELLANT:

AUBREY L. HARPER
114 North College Street
P.O. Box 588
McMinnville, TN 37111-0588

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

JANIS L. TURNER
Assistant Attorney General
425 5th Avenue North
Nashville, TN 37243

WILLIAM LOCKE
District Attorney General
Professional Building
McMinnville, TN 37110

OPINION FILED _____

AFFIRMED IN PART; REVERSED IN PART

DAVID H. WELLES, JUDGE

# OPINION

The Defendant, Lawrence "Gomer" Ralph, Jr., appeals as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. He was convicted on a Warren County jury verdict of burglary of an automobile, theft over $1,000, failure to yield to emergency lights, evading arrest, resisting arrest, violation of his habitual traffic offender status, and seventh-offense DUI.[1] He was sentenced as a multiple Range II offender to four years for burglary of an automobile, seven years for theft over $1,000, and four years for the habitual traffic offender violation. For the misdemeanor offenses, he was sentenced to thirty days in the county jail for failure to yield to emergency lights, nine months at 75% for evading arrest, four months at 75% for resisting arrest, and three hundred days for DUI. The sentences for theft over $1,000, failure to yield, and resisting arrest were ordered to be served concurrent to each other but consecutive to the other sentences, all of which were ordered to run consecutive to each other for an effective sentence of sixteen years and eight months.

The Defendant appeals his convictions and sentences and argues (1) that he was brought before the prospective jurors prior to jury selection while wearing shackles and that this prejudiced him; (2) that the trial court erred by ordering consecutive sentences; and (3) that the trial court erred in classifying him as a Range II offender. We affirm in part and reverse in part the judgment of the trial court.

---

[1] Tenn. Code Ann. §§ 39-14-402(a)(4); 39-14-103; 55-8-132; 39-16-603; 39-16-602; 55-50-504; 55-10-616; 55-10-401.

At the time of the offense, the Defendant was a resident of McMinnville, Tennessee. His father, Curly Ferrell, ran a pool hall on Main Street in McMinnville. The victim in this case, A.P. Ikeard, began to visit the pool hall a few days before the offense occurred on November 2, 1994. The victim testified that he had been retired since 1984 and that he was learning to play pool. On the morning of November 2, the victim went to the pool hall at approximately 7:00 a.m. The victim had seen the Defendant at the pool hall and knew that he was Ferrell's son. That morning, the Defendant asked the victim to give him a ride to a relative's house to cut timber. The victim owned a 1984 Ford LTD that he stated was in good condition and worth $2,500. The victim did not recall ever taking the Defendant anywhere prior to the time in question. Fred Thomas rode with them that morning.

The victim took the Defendant to the relative's house and stayed during the day. Several other persons were present to cut the timber, but the victim did not participate. The victim smelled alcohol on the Defendant but did not see him drinking. The victim, the Defendant, and Thomas returned to the pool hall at around 11:00 or 11:30 a.m. Later that day, Stanton Minton, the victim's neighbor, came to the pool hall and asked the victim to ride with him to look at some dogwood trees. The victim left his car behind the pool hall and he hid his keys under the driver's seat. Minton suggested that he remove the distributor wire to prevent anyone from taking the vehicle. The victim took the wire and put it in his pocket. They left at approximately 4:00 p.m. and returned at approximately 11:00 p.m. They had driven around the area and to the town of Viola. The victim denied that he had been drinking that night.

The victim and Minton returned to the victim's home because they agreed to retrieve his car the next morning. Someone told him that his car had been stolen, and he filed a complaint at the Warren County Jail. The victim went to see his car at Woodlee's Garage the next day and noticed several beer cans in the vehicle. The car had sustained damage estimated at $1,500. The victim never gave the Defendant permission to use his car.

On the evening of November 2, 1994, at approximately 9:30 p.m., Officer Chuck Taylor of the McMinnville Police Department observed a blue 1984 Ford LTD at the intersection of Locust Street and Spring Street. When the officer noticed that the car ran a stop sign and made a wide, sweeping turn onto Spring Street, he began to follow the vehicle. The car was on the wrong side of the road momentarily, but the occupant continued to drive and stopped at two traffic lights. The officer observed one person in the car. The vehicle pulled over at the pool hall. The officer activated his emergency lights and the car sped away. The officer pursued the vehicle at speeds exceeding ninety miles per hour. The car was again driven on the wrong side of the road and without lights. When the car reached the intersection of highways 127 and 8, the driver braked hard in an attempt to make a turn. The driver lost control and the car slammed into a guardrail. When the car stopped, the officer pulled alongside and recognized the driver as the Defendant.

The Defendant jumped out of the car and ran along the guardrail, jumped the guardrail, and ran into the bushes. Officer Todd Bess ran after the Defendant and shouted for him to stop. The Defendant eventually fell down and Officer Bess caught him. The Defendant struggled when Bess tried to handcuff him. An

-4-

off-duty officer, Tony Taylor, who was riding with Bess, administered pepper gas spray to subdue the Defendant. He was handcuffed and brought back to the patrol cars. The Defendant smelled of alcohol, appeared unsteady on his feet, and would not perform any field sobriety tests. Officers found six empty beer cans in the car. The Defendant refused to take an intoximeter test at the Warren County Jail.

The Defendant was indicted for burglary of an automobile, theft over $1,000, failure to yield to emergency lights, evading arrest, resisting arrest, violation of his habitual traffic offender status, DUI, and driving on a revoked license. The charge of driving on a revoked license was dismissed and the Defendant was convicted by a jury of the remaining offenses. He now appeals his convictions and sentences.

## I. VIOLATION OF RIGHT TO A FAIR TRIAL

As his first issue, the Defendant argues that he was brought in front of the jury venire prior to jury selection wearing shackles, preventing him from receiving a fair trial. The record of the proceedings indicates nothing regarding the Defendant wearing shackles. No objections by the Defendant are found and the record contains no other evidence at all relating to the Defendant's claim. The trial transcript reveals no evidence of shackling, nor do we have before us the Defendant's Motion for New Trial. Failure to make a contemporaneous objection waives consideration by this court of the issue on appeal. See Tenn. R. App. P. 36(a); State v. Killebrew, 760 S.W.2d 228, 235 (Tenn. Crim. App.), perm to appeal denied (Tenn. 1988). Without a record below which contains evidence

that an issue exists, we have nothing to review on appeal. Therefore, this issue has been waived.

## II. IMPROPER SENTENCING

Next, the Defendant argues that the trial court erred in sentencing him as a multiple offender and ordering that the sentences be served consecutively. The State correctly points out that the only pieces of evidence in the record regarding sentencing are the judgment of the trial court and the notices submitted by the State. The transcript of the sentencing hearing is not in the record before us.

It is the duty of an appellant to prepare an adequate record to allow a meaningful review on appeal. Tenn. R. App. P. 24(b); State v. Ballard, 855 S.W.2d 557, 560-61 (Tenn. 1993); State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988); State v. Bunch, 646 S.W.2d 158, 160 (Tenn.1983). Given the absence of the transcript of the sentencing hearing from the record, we must presume the trial court's findings with respect to the transcript are correct. State v. Richardson, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993); State v. Boling, 840 S.W.2d 944, 951 (Tenn. Crim. App. 1992). Because we cannot adequately review the sentencing procedure, this issue has been waived.

## III. PLAIN ERROR

This Court is authorized, in its discretion, to consider issues not properly presented for review "(1) to prevent needless litigation, (2) to prevent injury to the interests of the public, and (3) to prevent prejudice to the judicial process." Tenn. R. App. P. 13(b).

Although the Defendant cannot prevail on the two issues he brought before this Court, it has become evident that plain error exists in the record. Plain error may be addressed by an appellate court even when not raised in a motion for new trial. State v. Ogle, 666 S.W.2d 58 (Tenn. 1984). The Tennessee Rules of Criminal Procedure provide, in pertinent part, the following:

> An error which has affected the substantial rights of an accused may be noticed at any time, even though not raised in the motion for a new trial or assigned as error on appeal, in the discretion of the appellate court where necessary to do substantial justice.

Tenn. R. Crim. P. 52(b).

A substantial right is one of fundamental proportions which is constitutional in nature. See State v. Adkisson, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994). An error may be recognized as "plain" if it seriously affects the fairness of a judicial proceeding. Id. We believe it is necessary to address an error in this case in order to do substantial justice. Because we believe prosecution of the Defendant for burglary and theft of the same automobile offends notions of due process in this particular case, we are compelled to reverse the Defendant's conviction for burglary.

In 1991 our supreme court held that due process precludes conviction for kidnapping where the detention of the victim occurs as merely incidental to the commission of another felony such as robbery or rape. State v. Anthony, 817 S.W.2d 299, 300 (Tenn. 1991). In support of its holding, the Anthony court noted that "every robbery, by definition, involves some detention against the will of the victim." Id. at 306. The court announced that the appropriate test to determine when multiple convictions offend due process in a kidnapping and robbery case

is "whether the confinement, movement, or detention is essentially incidental to the accompanying felony and is not, therefore, sufficient to support a separate conviction for kidnapping, or whether it is significant enough, in and of itself, to warrant independent prosecution and is, therefore, sufficient to support such a conviction." Id.; see State v. Dixon, 957 S.W.2d 532, 534 (Tenn. 1997); State v. Coleman, 865 S.W.2d 455, 457 (Tenn. 1993); State v. Binion, 947 S.W.2d 867, 872-73 (Tenn. Crim. App. 1996).

In Anthony, the court indicated that a due process review necessarily includes an analysis of the criminal statutes involved and legislative intent. "In examining these general guidelines, it must be remembered that individual cases are sometimes dependent upon the wording of the particular statutes being construed, and upon the clarity of . . . legislative intent." Anthony, 817 S.W.2d at 306. It would be difficult, although not impossible, to steal a car without in some manner entering at least some portion of the car.[2] In the case sub judice, we do not believe that the legislature intended that stealing this car would constitute two crimes—burglary and theft.

This Court has applied the Anthony analysis to a case involving burglary of an automobile and attempted theft. State v. Roberts, 943 S.W.2d 403, 406-07 (Tenn. Crim. App. 1996). In Roberts we noted that not every attempted theft of a vehicle includes, by definition, a burglary of that vehicle; and therefore Anthony is "not strictly applicable" to a defendant so charged. Id. at 406. However, we concluded in Roberts that "the due process concerns underlying the

---

[2]In making this assertion, we note the broad legislative definition of "enter" as including "[i]ntrusion of any part of the body" and "[i]ntrusion of any object in physical contact with the body or any object controlled by remote control, electronic or otherwise." Tenn. Code Ann. § 39-14-402(b)(1)-(2).

holding of <u>Anthony</u> mandate[d] a similar result." <u>Id.</u> <u>Roberts</u> is controlling upon this case, notwithstanding the fact that here the Court considers convictions of burglary and theft, rather than attempted theft.

> In <u>Roberts</u>, we stated,
>
> If, for example, the State has alleged and shown that the defendant entered each vehicle with the intent to commit some felony, theft, or assault other than to steal the vehicle, such as to steal the radio or other articles from within, and then attempted to steal the vehicle, then those alleged facts would likely require a different result from the one we reach here. However, here the acts of entry into the vehicles as alleged and proven by the State are merely an essential and incidental step in the attempted theft of the vehicles themselves. The act of breaking into the vehicles is not significant enough, in and of itself, to warrant independent prosecution where the defendant is also convicted of attempted theft. . . . [U]nder the facts . . . convictions for both burglary and attempted theft violate the principles of <u>Anthony</u>.

<u>Id.</u> at 407.

In the case at bar, the Defendant's entry into the victim's vehicle was necessary to achieve the theft of the car. There is no evidence of a separate intent to steal any items from inside the vehicle, nor is there evidence that some other felony was intended or that items were in fact taken from the vehicle. Under these facts, the burglary of the automobile, without more, was essentially incidental to the theft and "part and parcel of that offense." <u>See</u> <u>Anthony</u>, 817 S.W.2d at 307. Therefore, we conclude that the Defendant's right to due process of law as expressed in <u>Anthony</u> and applied in <u>Roberts</u> require reversal of his conviction for burglary.

The Defendant's conviction for burglary is reversed and vacated. In all other respects the judgment is affirmed. This case is remanded to the trial court for the purpose of entering a judgment consistent with this opinion.

_____
DAVID H. WELLES, JUDGE

CONCUR:


_____
JOSEPH M. TIPTON, JUDGE


_____
JOE G. RILEY, JUDGE