IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 13, 2004

## STATE OF TENNESSEE v. RAYMOND D. SIMPSON

**Appeal from the Circuit Court for Dickson County**
**No. CR-6451A      Robert E. Burch, Judge**

___

**No. M2003-02951-CCA-R3-CD - Filed January 7, 2005**

___

The defendant, Raymond D. Simpson, pled guilty to criminally negligent homicide, a Class E felony.[1]  The trial court imposed a Range I sentence of two years.  The defendant was ordered to serve seven months in confinement and the remainder on probation.  The defendant contends that the trial court erred by denying full probation and/or community corrections.  The judgment of the trial court is affirmed; the sentence must be modified, however, to a Range I term of one year, with 105 days to be served in confinement and the balance on probation.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed as Modified**

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID H. WELLES, J., joined. JOHN EVERETT WILLIAMS, J., filed a concurring opinion.

William B. "Jake" Lockert, III, District Public Defender, for the appellant, Raymond D. Simpson.

Paul G. Summers, Attorney General & Reporter; Richard H. Dunavant, Assistant Attorney General; and Kim Menke, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On August 8, 2002, the defendant, Raymond D. Simpson, who was accompanied by his wife, Juanita Faye Simpson, and his children from a previous marriage, eleven-month old Jonathan Ferrell (the victim) and four-year-old Elizabeth Ferrell, wrecked his Toyota truck in Dickson County.  The truck had two bucket seats and there were no child restraint seats.  His daughter sat unrestrained on the floor between the seats, while the defendant's wife held his son in her arms.  As the defendant was driving, he looked down to talk to his daughter, steered onto the gravel on the shoulder of the road, overcorrected, and crossed into the oncoming lane.  The truck struck a bank, rolled over, and

___

[1]Cf. State v. Latrece Jones, ___ S.W.3d ___, No. E2002-00893-SC-R11-CD (Tenn. Nov. 23, 2004) (holding under similar but factually distinguishable circumstances that the evidence was insufficient to support a conviction for criminally negligent homicide).

landed on the passenger side. The defendant managed to climb out of the truck, lift the truck enough to permit the removal of the unconscious victim, and, while carrying the victim, ran three-fourths of a mile to get help. Despite the defendant's efforts, the victim died from cardiac arrest as a result of head trauma. Elizabeth Ferrell received only a scratch to her leg.

The Tennessee Highway Patrol conducted the investigation. Trooper Christopher McLellan, who testified at the sentencing hearing, described the seriousness of the impact as "mild." Because the victim was not restrained, he suffered a severe head injury when his head hit the pillar on the truck's passenger side. No evidence indicated that the defendant had been speeding or under the influence of any drugs or alcohol at the time of the accident. Trooper McLellan confirmed that the vehicle had no child restraint devices. It was his opinion that if he had been properly restrained, the victim would not have been injured in the wreck.

Dawn Ferrell, the defendant's ex-wife and mother of the victim, testified that on the day prior to the accident, she had taken the children to McDonald's to meet the defendant for his visitation weekend. According to Ms. Ferrell, the defendant arrived in his truck but explained that his mother was soon to arrive in her van, which did have proper child restraint seats. Ms. Ferrell left and the defendant eventually transported the children in his truck.

The record establishes that the issue of child restraint seats had arisen four months earlier at a hearing in the Cheatham County Juvenile Court. As Ms. Ferrell and the defendant were leaving the hearing, Ms. Ferrell's attorney complained that the defendant had not been using car seats during visitation periods. The judge ordered the defendant to use the restraints, in accordance with the law, and provided in his written order that "both parties shall insure that the children are in car sea[t]s during transportation."

The defendant's mother testified at the sentencing hearing that she was unaware that the defendant had visitation that week and had made no plans to loan him her van. She confirmed that her van, which had child restraint devices, would have been available to the defendant on the weekend of the accident had he asked to use it.

Donald Lewis, who had also lost a child and knew the defendant from a church support group, described the defendant as clearly remorseful after the accident. Michelle Ogle, a neighbor of the defendant's parents, confirmed that the defendant seemed sincere in his remorse. The defendant's wife testified that her husband had experienced significant emotional pain since the loss of his son.

The defendant testified that his son was having a hard time breathing after the accident so he administered CPR. He recalled that when the ambulance arrived fifteen to twenty minutes later, he returned to the scene of the accident to check on his wife and daughter. The defendant, who had completed high school and had a certification from Nashville Tech in electrical engineering, was working for Trident Boats at the time of the sentencing hearing and had been described as an "upstanding," "responsible," and "dependable" employee by his employer. He sought judicial

diversion and testified that if diversion was granted, he might be able to get a higher paying job with the Nashville Electric Service. By the time of the hearing, the defendant had a two-and-a-half month-old daughter by his current wife. He promised to use the proper child restraints in the future. The defendant had not seen his older daughter since the accident, explaining that he could not afford the visitation payments. In hopes of a probationary sentence, the defendant insisted that he would fully abide by any terms of release and expressed a desire to perform community service by talking to others about child safety.

Following the hearing, the trial court imposed a sentence of two years to be suspended after the service of one year. The sentence was later modified to provide for release after the service of seven months and six days. In this appeal, the defendant argues that the trial court erred by denying full probation and by denying community corrections.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597, 600 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102,-103,-210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

Especially mitigated or standard offenders convicted of Class C, D, or E felonies are, of course, presumed to be favorable candidates "for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). With certain statutory exceptions, none of which apply here, probation must be automatically considered by the trial court if the sentence imposed is eight years or less. Tenn. Code Ann. § 40-35-303(b) (Supp. 2001). The trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). When, as here, the defendant is entitled to the statutory presumption favoring alternative sentencing, the state must overcome the presumption by the showing of "evidence to the contrary." Tenn. Code Ann. §§ 40-35-102(6), -103; Ashby, 823 S.W.2d at 169; see also State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995), overruled in part on other grounds by State v. Hooper, 29 S.W.3d 1 (Tenn. 2000).

Conversely, it is the defendant who has the burden of demonstrating his suitability for total probation. Bingham, 910 S.W.2d at 455; see Tenn. Code Ann. § 40-35-303(b) (Supp. 2001).

Among the factors applicable to probation consideration are the circumstances of the offense, the defendant's criminal record, social history and present condition, and the deterrent effect upon and best interest of the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978). The nature and circumstances of the offense may often be so egregious as to preclude the grant of probation. See State v. Poe, 614 S.W.2d 403, 404 (Tenn. Crim. App. 1981). A lack of candor may also militate against a grant of probation. State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983). Moreover, in Ashby, our supreme court encouraged the grant of considerable discretionary authority to our trial courts in matters such as these. 823 S.W.2d at 171; see State v. Moss, 727 S.W.2d 229, 235 (Tenn.1986). "Each case must be bottomed upon its own facts." State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987). "It is not the policy or purpose of this court to place trial judges in a judicial straight-jacket in this or any other area, and we are always reluctant to interfere with their traditional discretionary powers." Ashby, 823 S.W.2d at 171.

The purpose of the Community Corrections Act of 1985 was to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration." Tenn. Code Ann. § 40-36-103. The community corrections sentence provides a desired degree of flexibility that may be both beneficial to the defendant and also serve legitimate societal aims. State v. Griffith, 787 S.W.2d 340, 342 (Tenn. 1990). Even in cases where the defendant meets the minimum requirements of the Community Corrections Act of 1985, the defendant is not necessarily entitled to be sentenced under the Act as a matter of law or right. Taylor, 744 S.W.2d at 922. The following offenders are eligible for a community corrections sentence:

> (1) Persons who, without this option, would be incarcerated in a correctional institution;
> (2) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
> (3) Persons who are convicted of nonviolent felony offenses;
> (4) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
> (5) Persons who do not demonstrate a present or past pattern of behavior indicating violence;
> (6) Persons who do not demonstrate a pattern of committing violent offenses; and
>
> Persons who are sentenced to incarceration or on escape at the time of consideration will not be eligible.

Tenn. Code Ann. § 40-36-106(a).

The trial court first denied judicial diversion and then throughly reviewed the sentencing guidelines. After determining that the defendant was "presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary," the trial court denied full probation. The trial court expressed particular concern that the failure to use restraint devices was a significant public problem, that other instances of the offense were present, and that the defendant, despite a prior warning in the juvenile court, had repeatedly failed to use child safety restraints. The trial court ultimately determined that total probation was not warranted "because of the repeated failure . . . to obey the law and to protect the people who were in his vehicle." While observing that probation would not serve as an "effective deterren[t] to others like inclined," the trial court ruled that "because of the circumstances of the offense and in order to not depreciate the seriousness of the offense and for the general deterrence value . . . total probation would not be appropriate."

The defendant has no prior criminal history and the accident was not caused by any impairment or reckless driving. That the defendant chose, however, despite a prior court warning and in the face of a specific request by the victim's mother, to disregard the child restraint requirements, supports the denial of immediate probation. The serious nature and circumstances of the crime may often be enough to warrant denial. In our view, the trial court did not abuse its discretion by ordering a sentence of split confinement.

Finally, the defendant argues that he should have been sentenced to community corrections. Initially, the defendant did not meet the minimum eligibility requirements because he entered a guilty plea to criminally negligent homicide, a crime against the person. See Tenn. Code Ann. § 39-13-212. He is therefore statutorily ineligible for community corrections unless he has certain "special needs." Tenn. Code Ann. § 40-36-106(c)). The record is devoid of any proof of "special needs." Because the defendant did not qualify for a community corrections sentence, the trial court did not abuse its discretion.

There is, however, another issue. Although the defendant has not contested the length of his sentence, it is our view that the two-year sentence imposed by the trial court violates the rule established in Blakely v. Washington, 542 U.S. ____, 124 S. Ct. 2531 (2004). It is also our view that the error must be recognized as "plain." Whether properly assigned or not this court may consider plain error upon the record under Rule 52(b) of the Tennessee Rules of Criminal Procedure. State v. Ogle, 666 S.W.2d 58 (Tenn. 1984).

Before an error may be so recognized, it must be "plain" and must affect a "substantial right" of the accused. In State v. Adkisson, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994), this court defined "substantial right" as a right of "fundamental proportions in the indictment process, a right to the proof of every element of the offense and . . . constitutional in nature." In that case, this court established five factors to be applied in determining whether an error is plain:

(a) The record must clearly establish what occurred in the trial court;
(b) a clear and unequivocal rule of law must have been breached;
(c) a substantial right of the accused must have been adversely affected;

(d) the accused [must not have waived] the issue for tactical reasons; and

(e) consideration of the error must be "necessary to do substantial justice."

Id. at 641-42.

In Blakely, which calls into question the continuing validity of our current sentencing scheme, the Court, applying the rule in Apprendi v. New Jersey, 566 U.S. 466, 490 (2000), struck down a provision of the Washington sentencing guidelines that permitted a trial judge to impose an "exceptional sentence" upon the finding of certain statutorily enumerated enhancement factors. The Court observed that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 542 S. Ct. at 2537. Finally, the Court concluded that "every defendant has a right to insist that the prosecutor prove to a jury [beyond a reasonable doubt] all facts legally essential to the punishment." Id. at 2543.

Under the rule established in Blakely, the defendant's prior convictions may be used to enhance the sentences. The record establishes that the defendant has no prior convictions. The enhancement factors applied by the trial court, (5) and (17), are not based upon prior convictions and were not admitted by the defendant. In consequence, the holding in Blakely would preclude their application. Under the rationale of Blakely, which controls, a sentence of one year, the presumptive sentence, is warranted. The defendant's sentence is, therefore, modified to one year, with 105 days to be served in confinement and the balance to be served on probation.

Accordingly, the judgment of the trial court is affirmed as modified.

_____

GARY R. WADE, PRESIDING JUDGE