IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 4, 2008

## STATE OF TENNESSEE v. McKINLEY WRIGHT

**Appeal from the Criminal Court for Shelby County**
**No. 06-01671   Paula Skahan, Judge**

**No. W2007-00823-CCA-R3-CD  - Filed September 4, 2008**

The defendant, McKinley Wright, appeals as of right his Shelby County jury conviction for unlawful possession with the intent to sell or deliver more than 15 grams of heroin, a Class B felony.[1]  The trial court sentenced the defendant to eleven years as a Range I, standard offender to be served consecutively to a previously imposed sentence.  On appeal, the defendant contends that the evidence is insufficient to support his conviction, that the trial court improperly admitted evidence without establishing the chain of custody, that the trial court improperly admitted testimony regarding the timing of testing controlled substances recovered by Shelby County authorities, that the trial court erred in failing to instruct the jury regarding facilitation, that the trial court imposed an excessive sentence, and that all of the cumulative errors deprived the defendant of his right to a fair trial.  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P.  3 Appeal as of Right;  Judgment of the Criminal Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE,  JJ., joined.

Robert Jones, District Public Defender; Phyllis Aluko and Donna Armstard, Assistant District Public Defenders, Memphis, Tennessee, attorneys for appellant.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; William L. Gibbons, District Attorney General; and Walter C. Scruggs, Assistant District Attorney General, attorneys for appellee, State of Tennessee.

### OPINION

Alan Norfleet testified that he was the defendant's community corrections officer in May 2005.  He recalled that the defendant was scheduled to report on May 16, 2005 at 8:30 a.m. but failed

---

[1] The defendant was indicted in a two count indictment for alternate theories of possession of heroin.  The jury returned a verdict on both counts and the trial court merged the counts at sentencing.

to show up until sometime after 4:00 p.m. that day. Upon his appearance, Norfleet asked the defendant to submit to a random drug screen. While the defendant was in the bathroom, Norfleet contacted the Fugitive Warrants Division of the Shelby County Sheriff's Department to serve the defendant with a revocation warrant for noncompliance with the community corrections program. Upon their arrival, officers arrested the defendant. While performing a pat down, they recovered small packets of a substance wrapped in tin foil and another bag containing a powdery substance. Officers also recovered a large amount of money from the defendant upon his arrest. At trial, Norfleet identified certain exhibits as the packets and bag recovered from the defendant's pockets. He testified that his memory of the appearance of the items was clear because he "actually watched it" occur and because he had never had officers discover any contraband on his clients in his three years as a community corrections officer.

Shelby County Sheriff's Department Deputy John Shields testified that he was working in the fugitive squad in May 2005 when he received a call to serve a revocation warrant on the defendant while he was at the community corrections office. Upon arresting the defendant, he conducted a pat down of the defendant. He recovered one thousand two hundred ninety dollars from the defendant in addition to a small baggie containing ten small foil packets and another baggie containing a white, doughy substance. Although he did not open the large baggie, he assumed from its appearance that the larger baggie contained cocaine. Deputy Shields identified the larger baggie at trial and explained that the substance had "obviously hardened" during its two years in evidence. Once he suspected the defendant to be in possession of illegal drugs, Deputy Shields took the defendant and the evidence to the Narcotics Division of the Shelby County Sheriff's Department. He testified that in his eleven years with the sheriff's department, he had never seen heroin and was unfamiliar with its appearance. Deputy Shields acknowledged that the larger bag appeared to be packaged differently at trial than when recovered from the defendant, but he explained that the original thinner bag inside the heavier bag was consistent in appearance with the item as it was found on the defendant. He testified that he collected the evidence from the defendant and gave it to Narcotics Detectives Charles Allen and David Boddie.

Shelby County Sheriff's Department Deputy Ray McCrary testified that he assisted Deputy Shields in the arrest of the defendant. He recalled that Deputy Shields recovered a large sum of cash, several foil packets and a large substance he also assumed to be cocaine. Deputy McCrary identified the baggies at trial but acknowledged that the soft, doughy substance had hardened over time. He also remarked that the larger baggie had been repackaged in another baggie but stated that he was "a hundred percent certain that's what was in [the defendant's] pocket." He recalled turning over the items to Narcotics Detectives Boddie and Allen. Deputy McCrary remarked that the defendant's arrest was atypical because it was unusual to discover a community corrections fugitive with drugs at the time of an arrest.

Shelby County Sheriff's Department Narcotics Detective Charles Allen testified that Deputies McCrary and Shields delivered the defendant and the substances to the narcotics division immediately upon the defendant's arrest. Detective Allen initially thought that the doughy substance was crack cocaine and that the foil packets contained heroin. He explained that he had seen a lot of cocaine but not as much heroin in his five years in the narcotics division. He also testified that the smaller packets indicated that the drugs were packaged for resale. Detective Allen questioned the

defendant who, after signing a <u>Miranda</u> waiver, told officers that he was delivering the drugs to someone for another unidentified person. Detective Allen testified that the defendant told them that the substance in the larger package was cocaine. Detective Boddie recalled field testing the substance and obtaining a weak positive result for cocaine. He related that investigators always send contraband to the Tennessee Bureau of Investigation Crime Lab (Crime Lab) for testing because the field tests are not always accurate or conclusive. The narcotics investigators turned the substances over to the property room when the defendant was booked. Detective Allen identified the items as those given to him by Deputies Shields and McCrary that were submitted to the property room by Detective Boddie.

Shelby County Sheriff's Department Narcotics Detective David Boddie testified that the defendant was brought to his office by fugitive officers who suspected him of being in possession of narcotics. He recalled that his partner, Detective Allen, gave him the narcotics found on the defendant so that Detective Boddie could test the substances. He recalled one oblong shaped packet and another package containing several small packets wrapped in foil. He recalled that he tested a sample from the oblong package for the presence of cocaine because "in [his] experience, [he] thought it could be nothing else but cocaine" because it did not appear to be methamphetamine and he had not "seen that much heroin." Furthermore, he recalled that the defendant told the officers that the substance was cocaine. When he tested the sample, it was positive for cocaine, although he stated that the indicator color of blue was lighter than usually seen in a positive cocaine test. Detective Boddie assumed that the light hue meant that the cocaine had been cut considerably from its pure form. He stated that the testing he performed is not conclusive but merely an indication and that all substances are sent to the Crime Lab for testing and conclusive identification. Detective Boddie described personally entering the evidence into the property room, removing it, and delivering it to the Crime Lab for analysis. He confirmed that the items submitted were the same as those returned from the Crime Lab and that the testing revealed the substances were heroin. On cross-examination, Detective Boddie acknowledged that he may have testified at the preliminary hearing that the substances were cocaine and methamphetamine, but at the time of the hearing the Crime Lab had not completed their testing.

Forensic Technician Rosemary Lambert of the Crime Lab testified that she received the evidence from Detective Boddie on January 20, 2006. She identified the items at trial as those submitted to her for analysis. She testified that as evidence is received for analysis each item is assigned a bar code number. She related that all the numbers on the evidence corresponded with the numbers as listed in the Crime Lab report. She recalled that her only contact with the evidence in this case was to receive it from Detective Boddie, assign the bar code numbers to each item and place it in the vault until requested by the testing agent. She stated that she gave the evidence to Agent Dana Parmenter for testing who returned it to Lambert to be secured in the vault after testing.

Special Agent Forensic Scientist Dana Parmenter was qualified as an expert in chemical analysis and controlled substance identification. She testified extensively about her receipt of the evidence, handling of the evidence, and repackaging of the evidence after completion of testing. Ultimately, Special Agent Parmenter identified all the evidence as those items received and tested by her related to this case. Regarding the initial testing done by the detectives, Special Agent Parmenter testified that the field tests are merely presumptive – meaning that they indicate that "a

drug may be present." She stated that, therefore, it is not unusual to obtain a result on a field test for cocaine or methamphetamine that later turns out to be heroin when tested in the Crime Lab. She described the field tests as "[j]ust the beginning" of the testing process and explained that one could obtain positive results for cocaine, methamphetamine and heroin from the same substance because they all contain similar chlorides that are detected by the field test. She further explained that additional testing, such as that performed in the Crime Lab, is a necessary part of the identification process in order to determine the specific nature of the controlled substance. Upon testing the substances in this case, Special Agent Parmenter concluded with scientific certainty that the large package and the small foil wrapped packets all contained heroin. Collectively, the substances weighed 30.5 grams – 5 grams less than when weighed by the detectives; however, Special Agent Parmenter explained that the difference in weight could be explained by settling or evaporation of moisture from the substances while awaiting testing. She also testified that Shelby County was the only county where items were not tested prior to taking a case to the grand jury, but that the Shelby County authorities waited until trial to send items for testing at the Crime Lab – explaining the discrepancy between the identification of the substances at the preliminary hearing and the identification of the substances at the trial.

The defendant presented the testimony of Norma Henry, an employee with the Shelby County Criminal Court Clerk's Office, who testified that the defendant was indicted by the July 2005 term of the grand jury for possession of cocaine alleged to have occurred on May 16, 2005. She related that court records showed the indictment was dismissed on February 27, 2006, after the January 20, 2006, testing by the Crime Lab revealed that the substances were actually heroin. The defendant was then re-indicted for possession of heroin.

Based upon this evidence, the jury found the defendant guilty of possession of more than fifteen grams of heroin with intent to sell and possession of more than fifteen grams of heroin with the intent to deliver, as charged in the indictment. The trial court merged both convictions into one count and sentenced the defendant to eleven years as a Range I, standard offender to be served consecutively to his previously imposed sentence of eight years.

ANALYSIS

*Sufficiency of the Evidence*

The defendant contends that the evidence is insufficient to support his conviction for possession of heroin with the intent to sell or deliver. He argues that the conflicting testimony regarding both the weight and the identification of the substances render the evidence to support his conviction insufficient. We disagree.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979) (emphasis in original). The appellate court does not reweigh the evidence; rather, it presumes that the jury has

resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, and on appeal the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict. Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

A conviction for possession of heroin with the intent to sell or deliver, a Class B felony, requires proof beyond a reasonable doubt that the defendant knowingly possessed heroin with the intent to sell or deliver it. Tenn. Code Ann. § 39-17-417(a)(4) and (b). A conviction for possession of 15 grams or more of heroin, as in this case, carries with it the risk of an additional fine not to exceed two hundred thousand dollars, but the conviction class of the offense remains a Class B felony. Tenn. Code Ann. § 39-17-417(i)(1). The proof in this case shows that the defendant, when arrested on a revocation warrant at the community corrections office, was in possession of a substantial amount of a controlled substance and a large amount of money. Initial testing, as well as the defendant's statement to detectives, lead the detectives to believe that the substance was cocaine. However, conclusive testing by the Crime Lab proved that the evidence seized from the defendant was, in fact, heroin. Although there was some discrepancy in the weight of the heroin at the time of the defendant's arrest versus at the time of testing, Special Agent Parmenter explained that evaporation or settling could cause such a difference in weight over time; furthermore, the lesser weight of 30.5 grams is sufficient proof to support a conviction for possession of more than 15 grams of heroin. Regarding the difference in testing results, Special Agent Parmenter and both detectives explained how the field testing performed on the substances could reveal the presence of cocaine and yet still be inconclusive as to the substances' actual chemical composition. In his statement to the detectives, the defendant admitted that he was delivering the substances to another person. Proof of the large amount of money found on the defendant coupled with the individual foil packaging of a portion of the heroin lends further proof that the defendant possessed the heroin with the intent to sell it as well. Therefore, we conclude that the evidence is sufficient to support the conviction for possession of more than 15 grams of heroin with the intent to sell or deliver.

### Sufficiency of Chain of Custody

Next, the defendant contends that the trial court erred in admitting the heroin recovered from the defendant without establishing a proper chain of custody. The defendant argues that the initial identification of the heroin as cocaine by both the defendant and the arresting officers calls into question whether the proper chain of custody was established to insure that no tampering or other mistakes occurred in the handling of the evidence. The state argues that the testimony of the witnesses clearly established the chain of custody and that appropriate notations on the evidence indicate that no tampering or mishandling occurred. Following our review, we agree with the state.

Rule 901(a) of the Tennessee Rules of Evidence provides that "the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." Therefore, if the facts and circumstances regarding the evidence "reasonably establish the identity and integrity of the evidence," it should be admitted. State v. Kacy Dewayne Cannon, --- S.W.3d ----, No. E2005-01237-CCA-R11-CD, 2008 WL 1868010 (Tenn. Apr. 29, 2008). However, if the state's proof of the chain of custody is lacking, then the evidence should not be admitted unless other appropriate means demonstrate the identity and integrity of the evidence. Id. In establishing the chain of custody, the state is not required to call as a witness every person who handled the evidence or to establish the identity of the evidence beyond all possibility of doubt or to exclude every possibility of tampering. Id.

The testimony in this case clearly established chain of custody as a prerequisite to the admission into evidence of the heroin. Each person who handled the evidence identified it at trial and explained from whom it was received and to whom, if anyone, it was given for further analysis. Through cross-examination, the defendant fully explored any changes in the appearance or packaging of the items. Notably, the witnesses explained any discrepancies in weight, appearance, or packaging. Additionally, each witness testified regarding notations or bar code assignments made to the evidence and confirmed that the items presented at trial were those seized from the defendant and tested by the Crime Lab. Based upon this evidence, we conclude that there was sufficient proof of chain of custody and that the trial court did not abuse its discretion in admitting the evidence.

### *Improper Testimony Regarding Submission to Testing*

The defendant contends that the trial court erred in allowing Special Agent Parmenter to testify regarding the Shelby County practice of waiting to submit evidence for testing until a trial is imminent. He argues that a major issue at trial was whether the substances tested by Special Agent Parmenter were the same substances previously identified as cocaine by the defendant and Shelby County authorities and that to allow such testimony without establishing Special Agent Parmenter's basis of knowledge of the Shelby County practices amounted to an improper "buttress" of the detectives' credibility in violation of Tennessee Rules of Evidence, Rule 602. The state argues that the defendant failed to object contemporaneously to this testimony on the basis of Rule 602 and that this issue should be deemed waived. In the alternative, the state argues that, even if the testimony had been properly objected to, the trial court committed no error in allowing the testimony because the witness's testimony properly established a basis of knowledge of the testing submission practices of agencies throughout West Tennessee.

Rule 602 of the Tennessee Rules of Evidence provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Evidence of personal knowledge may be inferred by the testimony itself or by the surrounding facts and circumstances. State v. Land, 34 S.W.3d 516, 529 (Tenn. Crim. App. 2000). Rulings on the admissibility of evidence are largely within the sound discretion of the trial court, and, on appellate review, a trial court's ruling to admit or exclude evidence will not be

disturbed unless it appears that such a ruling amounts to an abuse of discretion. State v. Dubose, 953 S.W.2d 649, 652 (Tenn.1997).

The record reveals that the defendant lodged a nonspecific objection to Special Agent Parmenter's testimony that was summarily overruled by the trial court. Therefore, it may be deemed waived for failure to object on the basis of Rule 602. Notwithstanding waiver, the defendant's argument fails because Special Agent Parmenter's testimony clearly establishes her personal knowledge of the testing practices of Shelby County law enforcement. She related that she was assigned to the West Tennessee region of the Crime Lab and that she was responsible for chemical analysis and controlled substances identification for that entire region, which includes Shelby County. She further stated that Shelby County was unique in the region because their authorities typically waited until a trial date was imminent to submit items to the lab for testing. This testimony was elicited as an explanation of the preliminary hearing testimony that the evidence was identified as cocaine and that the items were not submitted to the Crime Lab for conclusive testing until after the preliminary hearing. As such it was an appropriate response to the defendant's attempts at trial to refute the authenticity of the evidence and the accuracy of the testing. Therefore, we can conclude that the trial court properly admitted this testimony at trial.

### Jury Instruction Regarding Facilitation

The defendant contends that the trial court should have instructed the jury regarding facilitation as a lesser included offense of possession of heroin with the intent to sell or deliver based upon Detective Allen's testimony that the defendant told Detective Allen at his arrest that he was delivering the substances from one person to another. The state argues that this issue is waived due to the defendant's failure to request the jury instruction in writing and that the allegation does not rise to the level of plain error.

Initially, we note that this issue was not included in the motion for new trial. Tennessee Rules of Appellate Procedure 3(e) states, in pertinent part, that "in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, *jury instructions granted or refused* . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." Tenn. R. App. P. 3(e) (emphasis added); see State v. Martin, 940 S.W.2d 567, 569 (Tenn.1997) (holding that a defendant relinquishes the right to argue on appeal any issues that should have been presented in a motion for new trial); State v. Dodson, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989). When an issue is raised for the first time on appeal, it is typically waived. State v. Alvarado, 961 S.W.2d 136, 153 (Tenn. Crim. App.1996). Nevertheless, whether properly assigned or not, we may address the issue in the event there was plain error on the part of the trial court under Rule 52(b) of the Tennessee Rules of Criminal Procedure. State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000); State v. Ogle, 666 S.W.2d 58, 60 (Tenn.1984).

Additionally, our review of the record confirms that the defendant failed to submit a written request for the lesser included jury instruction at trial. Tennessee Code Annotated section 40-18-110, in pertinent part, provides:

(b) In the absence of a written request from a party specifically identifying the particular lesser included offense or offenses on which a jury instruction is sought, the trial judge may charge the jury on any lesser included offense or offenses, but no party shall be entitled to any such charge.

(c) Notwithstanding any other provision of law to the contrary, when the defendant fails to request the instruction of a lesser included offense as required by this section, such instruction is waived. Absent a written request, the failure of a trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief either in a motion for new trial or on appeal.

In State v. Page, 184 S.W.3d 223 (Tenn. 2006), the Tennessee Supreme Court determined that Tennessee Code Annotated section 40-18-110 was constitutional, concluding that "if a defendant fails to request an instruction on a lesser-included offense in writing at trial, the issue will be waived for purposes of plenary appellate review and cannot be cited as error in a motion for new trial or on appeal." Page, 184 S.W.3d at 229. "Tennessee Code Annotated section 40-18-110(c) does not violate a defendant's right to trial by jury." Id. at 231. Therefore, we conclude that the issue is waived. However, our supreme court also made clear that when a jury instruction is waived for failure to request it in writing, an appellate court may still review the issue for plain error. Id. at 230.

Therefore, we choose to consider whether it is appropriate to review the trial court's failure to charge facilitation of possession of a controlled substance under the plain error doctrine which provides that "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a [defendant] at any time." Tenn. R. Crim. P. 52(b). In order to review an issue under the plain error doctrine, five factors must be present: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the defendant must have been adversely affected; (4) the accused must not have waived the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. State v. Smith, 24 S.W.3d 274, 282-83 (Tenn. 2000) (adopting five factors set out in State v. Adkisson, 899 S.W.2d 626, 641 (Tenn. Crim. App. 1994)). As our supreme court stated in Page, "An error would have to [be] especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding, to rise to the level of plain error." Page, 184 S.W.3d at 231. Appellate courts are advised to use plain error sparingly in recognizing errors that have not been raised by the parties or have been waived due to a procedural default. State v. Bledsoe, 226 S.W.3d 349, 354 (Tenn. 2007). When an issue is raised regarding the trial court's failure to instruct on a lesser included offense, our analysis typically involves a determination of: (1) whether the offense is a lesser included offense under the test adopted in State v. Burns, 6 S.W.3d 453 (Tenn. 1999); (2) whether the evidence supports an instruction on the lesser included offense; and (3) whether the failure to instruct on the lesser included offense constitutes harmless error. State v. Allen, 69 S.W.3d 181, 187 (Tenn. 2002).

With these considerations in mind, we note that facilitation of possession of a controlled substance with the intent to sell or deliver has been acknowledged as a lesser included offense of possession with intent to sell or deliver. See State v. Nash, 104 S.W.3d 495, 499 (Tenn. 2003). Regarding whether the evidence supports the instruction, our supreme court formulated a two-step

analysis to assist in that determination: first, determine if any evidence exists that reasonable minds could accept as to the lesser offense; and second, determine by viewing the evidence liberally in the light most favorable to the existence of a lesser included offense, whether the evidence is sufficient to support a conviction for the lesser included offense. State v. Richmond, 90 S.W.3d 648, 660 (Tenn. 2002). "The evidence, not the theories of the parties, controls whether an instruction is required." Allen, 69 S.W.3d at 188.

When considering the requested instruction, the trial court referred to the defendant's statement to Detective Allen as "just so unspecific. We have – we have no information about anyone he got it from, where he was taking it. He has all the money, of course. You know it all supports him being the dealer. It doesn't support him being a little mule." The trial court further commented that the defendant's statement "didn't indicate that he was anything but guilty of any charge other than what he's already charged with. He said he's taking these narcotics to another party to deliver them." The trial court ultimately denied the requested instruction because it deemed it "really not appropriate" to the facts of this case.

Facilitation occurs when "knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a). This statute applies to a person who facilitates the criminal conduct of another by knowingly furnishing substantial assistance, but who lacks the intent to promote, assist, or benefit from the commission of the felony. See Tenn. Code Ann. § 39-11-403 Sentencing Commission Comments; State v. Fowler, 23 S.W.3d 285, 287 (Tenn.2000). Thus, a conviction for facilitation of possession of a controlled substance for sale or delivery requires proof of the following elements:

(1) that the defendant knew that another person intended to commit the specific felony of possession of heroin with the intent to sell or deliver, but did not have the intent to promote or assist the commission of the offense or to benefit in the proceeds or results of the offense;

(2) that the defendant furnished substantial assistance to that person in the commission of the felony; and

(3) that the defendant furnished such assistance knowingly.

See Tenn. Code Ann. §§ 39-11-403(a); 39-17-417(a)(4); T.P.I.-Crim. 3.02.

Following our review of the evidence, we conclude that facilitation should have been instructed relative to the possession with intent to sell count because a reasonable jury could have found that the defendant was facilitating the sale of heroin rather than actually selling heroin. However, we conclude that the evidence does not support an instruction for facilitation of possession of heroin with the intent to deliver. The defendant's statement to detectives shows, at a minimum, an intent to assist or promote in the delivery of the heroin. Therefore, it cannot be viewed as a mere facilitation and the trial court was not required to instruct on facilitation relative to the delivery count.

Now we must consider whether consideration of the trial court's failure to instruct regarding facilitation of the possession with intent to sell count is necessary to do substantial justice. The evidence in this case shows that the defendant was arrested on a community corrections violations warrant and found to be in possession of a large quantity of heroin. Several smaller packets of heroin were also found in his possession and the packaging of the packets indicated that they were packaged for resale. The defendant also possessed about twelve hundred dollars in cash at the time of his arrest, a further indication that he was not merely a mule or intermediary between two drug dealers and that he also intended to benefit in the proceeds. Furthermore, the defendant's admission to the detectives could only be viewed as an admission to the delivery count. Even if we were to assume that a jury would have convicted the defendant of facilitation of possession with the intent to sell, rather than the greater offense of possession with intent to sell, such a conviction would have necessarily merged into the conviction for possession with the intent to deliver. For these reasons, we conclude that the failure of the trial court to instruct on facilitation of possession with intent to sell does not rise to the level of plain error. Therefore, the defendant is not entitled to relief on this issue.

*Excessive Sentence*

The defendant contends that the trial court imposed an excessive sentence in ordering him to serve eleven years incarceration. The state concedes that one enhancement factor should not have been applied but contends that the remaining enhancement factors support the imposition of the eleven-year sentence. The defendant was convicted of a Class B felony and qualified as a Range I, standard offender. Thus, the appropriate range of his sentence was eight to twelve years. Tenn. Code Ann. § 40-35-112(a)(2) (2003). In determining the appropriate sentence, the trial court applied the following enhancement factors as found in Tennessee Code Annotated section 40-35-114 (2003):

> (2) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
>
> (9) The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release into the community; [and]
>
> (14) The felony was committed while on any of the following forms of release status [and] such release is from a prior felony conviction:
>
> . . .
> (C) Probation.

Tenn. Code Ann. § 40-35-114(2), (9), and (14) (2003). The defendant argues that the simultaneous application of factors (9) and (14) violate his double jeopardy rights. The state concedes that factor (9) should not have been applied by the trial court based upon the assertion that it is not applicable to the defendant's case, i.e. the defendant has no history of noncompliance except for the facts of the present case that do not qualify as "previous history." Initially, we note that the offense was committed prior to the 2005 revisions to the sentencing act, that the defendant did not waive any ex post facto application of the revisions and that the defendant was sentenced under the former version of the sentencing act. See 2005 Tenn. Pub. Act ch. 353, § 18. Although not raised by either party,

the Sixth Amendment prohibition against the use of judicially determined facts, other than a prior conviction, to increase the length of sentence as announced by the United States Supreme Court in Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000), and its progeny, is implicated in this case and must be addressed.

An appellate court's review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d) (2003). As the Sentencing Commission Comments to this section note, on appeal the burden is on the defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, the court may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

Under the law as it existed before the 2005 amendment, unless enhancement factors were present, the presumptive sentence to be imposed was the minimum in the range for a Class B felony. Tenn. Code Ann. § 40-35-210(c) (2003). Tennessee's pre-2005 sentencing act provided that, procedurally, the trial court was to increase the sentence within the range based on the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors. Id. at (d), (e). However, the Tennessee Supreme Court recently held that the trial court's enhancement of a defendant's sentence based on factors that had not been found by a jury beyond a reasonable doubt violated a defendant's Sixth Amendment right to a jury trial as interpreted by the Supreme Court. State v. Gomez, 239 S.W.3d 733, 740 (Tenn. 2007) ("Gomez II") (citing Cunningham v. California, 549 U.S. 270, 127 S. Ct. 856, 860 (2007)); See also Blakely v. Washington, 542 U.S. 296, 301, 124 S. Ct. 2531, 2536 (2004) (quoting Apprendi, 530 U.S. at 490, 120 S. Ct. at 2362-63) ("'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'"). Accordingly, we conclude that the trial court's application of enhancement factors (9) and (14) to the defendant's sentence was improper. However, we further observe that any Blakely error in this case was harmless beyond a reasonable doubt.

In applying the enhancement factor of previous criminal history, the trial court noted that the defendant had been convicted previously of forgery, failure to appear, theft of property valued at less than five hundred dollars, driving on a revoked license and introduction of contraband into a penal facility. These convictions were in addition to the two counts of manufacturing a controlled substance for which the defendant was serving a community corrections sentence at the time of his arrest for the instant offense. We conclude that such a criminal history supports the imposition of an eleven-year sentence of incarceration and renders the Blakely error harmless.

### *Cumulative Errors*

In his final issue on appeal, the defendant makes a blanket allegation that the cumulative effect of the errors complained of amount to a denial of due process in his case. Initially, we note that the two-sentence argument contained in the defendant's brief raises this issue with such non-

specificity that the issue could be deemed waived by this court. <u>See</u> Tenn. R. App. P. 27(a)(7). However, having already concluded that none of the alleged errors merit relief, we conclude that defendant's rights to a fair trial and due process were not violated in this case.

## CONCLUSION

Following our review, we conclude that there is sufficient evidence to support the defendant's conviction for possession of heroin with the intent to sell or deliver. We also conclude that the trial court correctly admitted evidence after sufficient proof of the chain of custody was admitted, that the trial court correctly admitted testimony regarding the timing of contraband testing by the Shelby County authorities, that the trial court should have instructed regarding facilitation but that the failure to do so was harmless error, that the application of an appropriate enhancement factor by the trial court supports the imposition of sentence, and that the defendant was not denied his right to a fair trial or due process. Having so concluded, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE