IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 9, 2003

**STATE OF TENNESSEE v. TRAVIS PARSON**

**Appeal from the Criminal Court for Shelby County**
**Nos. 01-07733 – 01-07736     Bernie Weinman, Judge**

---

**No. W2002-02743-CCA-R3-CD  - Filed March 3, 2004**

---

The defendant, Travis Parson, and co-defendant Marcus Johnson were initially indicted for two counts of especially aggravated robbery, premeditated murder, and felony murder. The defendant was convicted of two counts of especially aggravated robbery and one count of criminally negligent homicide. The trial court imposed consecutive sentences of twenty years for each of the robbery convictions and a concurrent sentence of two years for the homicide conviction, an effective sentence of forty years. In this appeal of right, the defendant asserts that the sentences are excessive and that the trial court erred by ordering consecutive sentencing. Because the defendant's dual convictions for especially aggravated robbery violate the principles of double jeopardy, only one of the convictions is affirmed. The other is modified to aggravated assault. Because the record does not support consecutive sentencing, the sentences are ordered to be served concurrently. The aggravated assault conviction is remanded to the trial court for sentencing. The remainder of the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed in Part, Reversed in Part, and Remanded in Part**

GARY R. WADE, P.J., delivered the opinion of the court, in which JERRY L. SMITH, J., joined. JOE G. RILEY, J., filed a separate opinion, concurring in part and dissenting in part.

Robert Wilson, Shelby County Public Defender (of counsel); Garland Erguden, Assistant Public Defender (on appeal); Teresa Jones, Assistant Public Defender (at trial); and Anne Tipton, Memphis, Tennessee (at trial), for the appellant, Travis Parson.

Paul G. Summers, Attorney General & Reporter; Braden H. Boucek, Assistant Attorney General; and Scott Bearup and Patience Branham, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

On the evening of December 28, 2000, the victim, Mahmoud Ghannam, who managed the Discount Shop, was on duty with a fellow employee, Yehia Abu-Hamda. Shortly after 9:00 p.m., the victim heard a noise and saw two men two or three meters away "just in front of the door." One was short and one was tall. Both wore masks. The victim was struck by two bullets, fell to the floor, and then heard between seven and ten more shots, but was unable to tell who was firing. When he sat up to call for help, he realized that the tall man was still in the store and so he remained quiet until he left. The victim described the taller man as wearing a "jacket with cream color and light blue" with a San Francisco logo in white letters trimmed in red. The victim was unable to see the face of either of his assailants but determined that they were black based upon the color of their hands. According to the victim, the defendant Parson was a regular patron of the Discount Shop and had worn the San Francisco jacket on numerous occasions.

After waiting to make sure that no one else was in the store, the victim went to the office behind the counter area, where Abu-Hamda was lying on the floor in a pool of blood. The victim pushed the store security button to summon police. He then used Abu-Hamda's cellular telephone to call 911 and report the shootings. Abu-Hamda died from multiple gunshot wounds from a high velocity weapon. A cigar box in which store employees held large bills was discovered missing. Approximately $1,400 to $1,600 was determined to have been taken in the robbery.

Sergeant William Dwayne Merritt, a homicide investigator with the Memphis Police Department, coordinated the investigation. A tip from Crime Stoppers led to the arrest of the co-defendant Johnson, who initially provided the police with a fictitious name for the co-perpetrator. Eventually, he implicated the defendant. Afterward, Sergeant Merritt interviewed the defendant, who initially denied any involvement in the robbery and shooting. After being informed that Johnson had already given an incriminating statement, the defendant acknowledged that he had participated in the robbery. The defendant claimed that the robbery was Johnson's idea and that Johnson had provided him with a loaded double barrel shotgun. The defendant contended that he fired a single warning shot upon entering and did not otherwise fire his weapon. He claimed that Johnson had an assault rifle and took approximately $280 from a cigar box and also stole some cigarettes. The defendant stated that his share of the stolen money was approximately $130. According to Sergeant Merritt, Johnson was "much shorter" than the defendant. While there was a security camera in the store, it was not recording at the time of the offenses.

Keith Hull, the defendant's brother, testified as an alibi witness for the defense. He claimed that the defendant telephoned him at his residence at approximately 9:00 p.m. on the evening of the robbery. He contended that his caller identification indicated that the defendant was calling from his mother's residence, where he was living at the time. According to Hull, they talked for approximately fifteen minutes, discussing basketball and New Year's Eve plans.

The defendant, who was twenty-three years of age at the time of the trial, claimed that he was at his mother's residence at the time of the offenses, visiting with his girlfriend and her two children. He contended that they did not leave the residence at any time that day and insisted that he had telephoned his brother at approximately 9:00 p.m. to discuss a New Year's Eve party. According

to the defendant, he was initially contacted by the police on January 3, about a week after the robbery. That evening, Detective Sheridan picked him up at his mother's residence and drove him to the police station. The defendant contended that he initially denied any involvement in the offenses, but that he eventually confessed after four hours had passed because the detectives told him that if he "didn't give a statement that was similar to [co-defendant Johnson's] that they were going to make sure that [he] faced the death penalty." The defendant denied having participated in the offenses and maintained that he obtained the details he provided officers from Johnson's statement. The defendant also denied having ever owned a cream and light blue San Francisco jacket. He contended that his then-girlfriend was not present at his trial to offer alibi testimony because of "[d]isagreements and things of that such." The defendant explained that his mother could not offer such testimony because she was away from her residence on the evening of the offenses.

I

Although not raised by the parties, there is an issue as to whether the defendant's dual convictions for aggravated robbery violate the principles of double jeopardy. Whether properly assigned or not, however, this court may consider plain error upon the record under Rule 52(b) of the Tennessee Rules of Criminal Procedure. State v. Ogle, 666 S.W.2d 58 (Tenn. 1984).

Before an error may be so recognized, it must be "plain" and must affect a "substantial right" of the accused. The word "plain" is synonymous with "clear" or equivalently "obvious." United States v. Olano, 507 U.S. 725 (1993). Plain error is not merely error that is conspicuous, but especially egregious error that strikes at the fairness, integrity, or public reputation of judicial proceedings. See State v. Wooden, 658 S.W.2d 553, 559 (Tenn. Crim. App. 1983). In State v. Adkisson, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994), this court defined "substantial right" as a right of "fundamental proportions in the indictment process, a right to the proof of every element of the offense and . . . constitutional in nature." In that case, this court established five factors to be applied in determining whether an error is plain:

> (a) The record must clearly establish what occurred in the trial court;
> (b) a clear and unequivocal rule of law must have been breached;
> (c) a substantial right of the accused must have been adversely affected;
> (d) the accused [must not have waived] the issue for tactical reasons; and
> (e) consideration of the error must be "necessary to do substantial justice."

Id. at 641-42. Our supreme court characterized the Adkisson test as a "clear and meaningful standard" and emphasized that each of the five factors must be present before an error qualifies as plain error. State v. Smith, 24 S.W.3d 274, 282-83 (Tenn. 2000). In this case, all five factors are present.

The double jeopardy provisions of both the United States and Tennessee Constitutions provide that

"no person shall be put in jeopardy of life or limb for the same offense. U.S. Const. amend. 5; Tenn. Const. art. I, § 10. The clause has been interpreted to include the following protections: 'It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.' North Carolina v. Pearce, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076, 23 L. Ed. 2d 656 (1969)[;] State v. Phillips, 924 S.W.2d 662, 664 (Tenn.1996)."

State v. Price, 46 S.W.3d 785, 824 (Tenn. Crim. App. 2000) (quoting State v. Addison, 973 S.W.2d 260, 266-67 (Tenn. Crim. App. 1997)).

On September 4, 2003, this court released its opinion in the direct appeal filed by co-defendant Marcus Johnson. See State v. Marcus Johnson, No. W2002-00987-CCA-R3CD (Tenn. Crim. App., at Jackson, Sept. 4, 2003). In that case, a panel of this court concluded that Johnson could not be convicted of two separate charges of aggravated robbery and therefore modified the conviction for the aggravated robbery of the victim Ghannam to aggravated assault. In doing so, the court ruled as follows:

Defendant was indicted for the especially aggravated robbery of each victim. There was no evidence presented at trial that property belonging individually to each victim was taken. See Moore v. State, 563 S.W.2d 215 (Tenn. Crim. App. 1977). Our review of the record reveals that the evidence supports only one robbery, and dual convictions for especially aggravated robbery violate the principles of double jeopardy.

Where an error in the criminal proceedings is found to affect the substantial rights of the defendant, the error may be noticed at any time, even though not raised in the motion for new trial or assigned as error on appeal, in the discretion of the appellate court where necessary to do substantial justice. Tenn. R. Crim. P. 52(b).

*     *     *

This Court recently held, in a case with similar circumstances, that a single incident of robbery involving two victims constitutes the same offense. State v. Irvin Lee Franklin and Jerry Lorenze Sandridge, 2003 Tenn. Crim. App. LEXIS 568, No. W2002-00945-CCA-R3-CD (Tenn. Crim. App. at Jackson, June 27, 2003), [perm. to appeal denied (Tenn. Dec. 22, 2003)]. A panel of this Court stated, "the proper unit of prosecution for aggravated robbery in Tennessee is the number of thefts, rather than the number of victims." Id. This Court relied upon the Tennessee Supreme Court's holding in State v. Lewis, 958 S.W.2d 736 (Tenn. 1997), in which the Court held that a defendant could not be convicted of multiple counts of aggravated arson where he set fire to a single apartment building that contained several individual apartments. This Court reasoned that the statute defines robbery in terms of theft. See Tenn. Code Ann. § 39-13-401(a). In this case, there was only one theft or taking of property. Furthermore, the distinguishing characteristic

-4-

between the offense of robbery and the offense of theft is the manner in which property is taken, which is by violence or fear. See State v. Owens, 20 S.W.3d 634, 638 (Tenn. 2000). A taking may be accomplished by the threat of fear or violence regardless of whether there is a single victim or multiple victims involved. Because the only taking in this case occurred when co-defendant Parson took cash and cigarettes from behind the store counter, Defendant can be convicted of only one especially aggravated robbery.

Defendant is nevertheless guilty of a crime against each victim. The evidence supports the finding that both victims were made to reasonably fear imminent bodily injury by use or display of a deadly weapon, which constitutes the offense of aggravated assault. Tenn. Code Ann. § 39-13-102(a)(1)(B), -101(a)(2) (1997 & Supp. 2002). Under the test established in State v. Burns, 6 S.W.3d 453 (Tenn. 1999), aggravated assault is a part (a) lesser-included offense of especially aggravated robbery. See State v. Jason C. Carter, 2000 Tenn. Crim. App. LEXIS 340, No. M1998-00798-CCA-R3-CD (Tenn. Crim. App., filed at Nashville, April 27, 2000), perm. to appeal denied (Tenn. 2000). As alleged in the indictment, each element of aggravated assault is included in the elements of especially aggravated robbery.

The record reveals that Defendant entered the Discount Shop armed with an AK-47. Mr. Ghannam testified that he heard several shots and feared for his life. As to the deceased victim, Mr. Abu-Hamda, we conclude that the evidence clearly supports Defendant's conviction for especially aggravated robbery. Mr. Abu-Hamda, a store clerk, was standing behind the counter where the money and cigarettes were located, and he was shot and killed. The especially aggravated robbery of Mr. Abu-Hamda is the "triggering offense" which establishes the felony murder conviction. Without depreciating the seriousness of the attack upon Mr. Ghannam, we conclude that the evidence more appropriately supports a conviction for aggravated assault against Mr. Ghannam under the facts and circumstances of this case.

Accordingly, Defendant's conviction for the especially aggravated robbery of Mr. Abu-Hamda is affirmed. Defendant's conviction for the especially aggravated robbery of Mr. Ghannam is modified to aggravated assault, and this case is remanded to the trial court for resentencing on that offense.

Id., slip op. at 10-12.

For the same reasons stated by the panel in Johnson's case, the conviction for the aggravated robbery of Ghannam must be modified to aggravated assault and remanded to the trial court for sentencing.

II

Next, the defendant argues that his sentences are excessive. Specifically, he asserts that the trial court erred by applying enhancement factors (4), that the offense involves more than one victim; (7), that the personal injuries inflicted upon the victims were particularly great; (10), that the defendant possessed or employed a firearm during the commission of the offense; and (11), that the defendant had no hesitation about committing a crime when the risk to human life was high. See Tenn. Code Ann. § 40-35-114 (4), (7), (10), (11) (Supp. 2002).[1] The state concedes the misapplication of certain of the factors but contends that the sentences were still warranted. Because the especially aggravated robbery conviction with regard to the victim Ghannam has been modified to aggravated assault and remanded for re-sentencing, our concern on the issue pertains only to the sentences for especially aggravated robbery and criminally negligent homicide.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597, 600 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

At the sentencing hearing, the victim testified that as a result of the shooting, he had undergone three surgical procedures and four months of physical therapy. He related that his doctor had limited lifting with his left hand to fifteen pounds and that further improvement was not expected. The victim was out of work for approximately nine months, and because he was unable to return to the Discount Shop, he had gone into the wholesale business with his wife.

---

[1] The trial court and the parties refer to the original numbering of these enhancement factors found in Tennessee Code Annotated section 40-35-114. However, these factors were renumbered by the General Assembly effective July 1, 2002. See Tenn. Code Ann. § 40-35-114 (Supp. 2002). Because the defendant was sentenced on October 10, 2002, the new numbering should have been applied and will be used in this opinion.

Demita Parson, the defendant's older sister, testified that when the defendant was a child, he was "adventurous" but was nevertheless "a good boy." She often provided care for the defendant, whom she described as obedient. Ms. Parson testified that the defendant had dropped out of high school but had obtained his GED in an effort to "get straight."

At the close of the proof, the trial court found the following enhancement factors to be applicable: (2), that the defendant has a previous history of criminal convictions in addition to those necessary to establish the appropriate range; (4), that the offense involved more than one victim; and (7), that the personal injuries inflicted upon the victims were particularly great. See Tenn. Code Ann. § 40-35-114(2), (4), (7) (Supp. 2003). It is not clear from the record which of the enhancement factors were applied to each conviction. After finding no mitigating factors to be applicable, see Tenn. Code Ann. § 40-35-113, the trial court set the sentence for each aggravated robbery at twenty years, the midpoint in the range, and the sentence for criminally negligent homicide at two years, the maximum in the range.

Initially, the defendant concedes that his history of criminal convictions supports the trial court's application of enhancement factor (2), but argues that the trial court erred by applying enhancement factor (4), that the offenses involved more than one victim. Because there was a separate conviction for each victim, the state concedes that this factor was inapplicable. In State v. McKnight, 900 S.W.2d 36 (Tenn. Crim. App. 1994), this court ruled that the multiple victim factor is not applicable when convictions are entered for each victim, as in this case. See also State v. Williamson, 919 S.W.2d 69, 82 (Tenn. Crim. App. 1995) (holding that the multiple victim enhancement factor cannot be applied when the defendant is convicted of separate offenses against each victim). Because the defendant received separate convictions for each victim, the trial court's application of this factor was erroneous.

The defendant next asserts that the trial court erred by applying enhancement factor (7), that the personal injuries inflicted upon the victims were particularly great, because that factor is inherent in the crimes of especially aggravated robbery and criminally negligent homicide. Again, the state has conceded error. Serious bodily injury is an essential element of especially aggravated robbery. Tenn. Code Ann. § 39-13-403(a)(2). Our supreme court has held that proof of serious bodily injury will always constitute proof of particularly great injury. See State v. Jones, 883 S.W.2d 597, 602 (Tenn. 1994); see also State v. Nix, 922 S.W.2d 894, 903 (Tenn. Crim. App. 1995). "Particularly great injury is also an essential element of criminally negligent homicide because no greater injury than death can be inflicted upon a person." State v. William Jason McMahan, No. No. 03C01-9707-CR-00262, slip op. at 29 (Tenn. Crim. App., at Knoxville, March 31, 1999). Accordingly, enhancement factor (7) should not have been applied by the trial court.

Next, the defendant contends that the trial court erred by applying enhancement factor (10), that the defendant employed a firearm or deadly weapon during the offense, because it is an essential element of especially aggravated robbery. While it is unclear whether the trial court intended to apply this enhancement factor, the state agrees that application of the factor would have been erroneous. On a form used by the trial court during sentencing, the factor is circled but there is a

notation that the factor was "part of the offense." The transcript of the sentencing hearing reflects that the trial court understood that the firearms were a "part of the offense." It is our interpretation that the trial court did not apply this factor to any of the convictions. Especially aggravated robbery is robbery accomplished with a deadly weapon and where the victim suffers serious bodily injury. Tenn. Code Ann. § 39-13-403(a). The use of a firearm in the commission of the crime was, of course, a basis for that conviction. See State v. Wilkerson, 905 S.W.2d 933, 934 (Tenn. 1995).

The state contends that the trial court's application of enhancement factor (10) to the conviction for criminally negligent homicide was appropriate. Because the factor is not an essential element of the offense, it was properly applied. See Tenn. Code Ann. §§ 39-11-302(d), 39-13-212; State v. Royce Lee "Dino" Lane, No. 02-C-01-9102-CR-00011 (Tenn. Crim. App., at Jackson, Jan. 29, 1992).

Finally, the defendant asserts that the trial court misapplied enhancement factor (11), that the defendant had no hesitation about committing a crime when the risk to human life was high. Again, it is unclear whether the trial court actually applied this factor. While the state again concedes that application of this factor would have been error, the transcript of the sentencing hearing contains no indication that it was considered by the trial court. There is no suggestion that the shots fired during the offenses posed a threat to anyone other than the named victims. See State v. Imfeld, 70 S.W.3d 698, 707 (Tenn. 2002); Nix, 922 S.W.2d at 903. Accordingly, this factor would not be applicable.

In summary, as to all of the convictions, the trial court erroneously applied enhancement factors (4), that the offenses involved more than one victim; (7), that the personal injuries inflicted upon the victims were particularly great; and (11), that the defendant had no hesitation about committing an offense when the risk to human life was high. As to the especially aggravated robbery convictions, it also erred by applying enhancement factor (10), that the defendant employed a firearm or deadly weapon during the offenses. The trial court properly applied enhancement factor (2), that the defendant has a previous history of criminal convictions in addition to those necessary to establish the range, to each of the defendant's convictions. It also properly applied enhancement factor (10) to the conviction for criminally negligent homicide. The trial court found no mitigating factors to be applicable and the defendant does not advance any such factors on appeal.

In calculating the sentence for a Class A felony conviction, the presumptive sentence is the midpoint within the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). If there are enhancement factors but no mitigating factors, the trial court shall set the sentence at or above the midpoint. Tenn. Code Ann. § 40-35-210(d). If there are mitigating factors but no enhancement factors, the trial court shall set the sentence at or below the midpoint. Id. A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn. Code Ann. § 40-35-210(e). The sentence should then be reduced within the range by any weight assigned to the mitigating factors present. Id.

Especially aggravated robbery is a Class A felony with a Range I sentence range of fifteen to twenty-five years. See Tenn. Code Ann. §§ 39-13-403(b), 40-35-112(a)(1). The presentence report reflects that the twenty-four-year-old defendant, who dropped out of high school in the eleventh grade but later obtained his GED, has the following prior criminal record: patronizing prostitution (01/29/01), possession of marijuana (01/29/01), and driving on a suspended, revoked, or cancelled license (0/10/01). The defendant's juvenile record reflects that he was placed on unsupervised probation in November of 1995 for vehicle theft. In October of 1994, the defendant was placed in Hanover House after being found in possession of a pistol on school property. However, prior juvenile adjudications may only be considered under enhancement factor (21) if they would have been felonies for an adult. State v. Jackson, 60 S.W.3d 738, 742 (Tenn. 2001). Thus, the trial court could have applied enhancement factor (21), but only based on the adjudication of vehicle theft. Accordingly, the defendant's prior criminal history should be accorded some weight. In our view, the mid-range sentence of twenty years initially fixed by the trial court for the defendant's conviction for the especially aggravated robbery of the victim Abu-Hamda was appropriate.

In calculating the sentence for a Class B, C, D, or E felony conviction, the presumptive sentence is the minimum in the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). If there are enhancement but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn. Code Ann. § 40-35-210(e). The sentence should then be reduced within the range by any weight assigned to the mitigating factors present. Id.

Criminally negligent homicide is a Class E felony with a Range I sentence range of one to two years. See Tenn. Code Ann. §§ 39-13-212(b), 40-35-112(a)(5). In our view, the applicable enhancement factors, warrant a one-year increase from the one-year minimum to the two-year maximum.

III

Finally, the defendant asserts that the trial court erred by ordering consecutive sentencing. The state contends that consecutive sentencing is warranted because the defendant has an extensive record of criminal activity and is a dangerous offender whose behavior indicates little or no regard for human life.

Prior to the enactment of the Criminal Sentencing Reform Act of 1989, the limited classifications for the imposition of consecutive sentences were set out in Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976). In that case our supreme court ruled that aggravating circumstances must be present before placement in any one of the classifications. Later, in State v. Taylor, 739 S.W.2d 227 (Tenn. 1987), the court established an additional category for those defendants convicted of two

-9-

or more statutory offenses involving sexual abuse of minors. There were, however, additional words of caution:

> [C]onsecutive sentences should not routinely be imposed . . . and . . . the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved.

Taylor, 739 S.W.2d at 230. The Sentencing Commission Comments adopted the cautionary language. Tenn. Code Ann. § 40-35-115. The 1989 Act is, in essence, the codification of the holdings in Gray and Taylor; consecutive sentences may be imposed in the discretion of the trial court only upon a determination that one or more of the following criteria[2] exist:

> (1) The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
>
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
>
> (6) The defendant is sentenced for an offense committed while on probation;
>
> (7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

---

[2]The first four criteria are found in Gray. A fifth category in Gray, based on a specific number of prior felony convictions, may enhance the sentence range but is no longer a listed criterion. See Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments.

The length of the sentence, when consecutive in nature, must be "justly deserved in relation to the seriousness of the offense," Tenn. Code Ann. § 40-35-102(1), and "no greater than that deserved" under the circumstances, Tenn. Code Ann. § 40-35-103(2); State v. Lane, 3 S.W.3d 456 (Tenn. 1999).

In Gray, our supreme court ruled that before consecutive sentencing could be imposed upon the dangerous offender, considered the most subjective of the classifications and the most difficult to apply, other conditions must be present: (a) that the crimes involved aggravating circumstances; (b) that consecutive sentences are a necessary means to protect the public from the defendant; and (c) that the term reasonably relates to the severity of the offenses. In State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995), our high court reaffirmed those principles, holding that consecutive sentences cannot be required of the dangerous offender "unless the terms reasonably relate[] to the severity of the offenses committed and are necessary in order to protect the public (society) from further criminal acts by those persons who resort to aggravated criminal conduct." The Wilkerson decision, which modified somewhat the strict factual guidelines for consecutive sentencing adopted in State v. Woods, 814 S.W.2d 378, 380 (Tenn. Crim. App. 1991), described sentencing as a "human process that neither can nor should be reduced to a set of fixed and mechanical rules." Wilkerson, 905 S.W.2d at 938.

At the close of the sentencing hearing, the trial court made the following findings relative to consecutive sentencing:

> [B]ased on two separate injuries, two separate woundings – understanding it happened in – in a very short period of time – but I think [there are] two distinct acts and that based on the seriousness of the act, they should be run consecutive.[3]

The sentencing form used by the trial court conflicts with the holding. The trial court has circled "no" next to each of the section 40-35-115 criteria for consecutive sentencing. In our view, the form used by the trial court reflects a more accurate assessment. None of the factors that would warrant consecutive sentencing appear to be present in this case. The evidence did not establish that the defendant is a professional criminal. Although the defendant has a prior criminal record, it is not extensive. None of his prior criminal convictions involved violence. The defendant does not qualify as a dangerous mentally abnormal person so declared by a competent psychiatrist and has not been convicted of two or more offenses involving sexual abuse of a minor.

---

[3]With regard to the co-defendant Johnson, who was convicted of felony murder and two counts of especially aggravated robbery, the trial court apparently determined him to be a dangerous offender, but failed to make the requisite findings in support thereof. Although not raised by the parties, this court reversed the order of consecutive sentencing and ordered the trial court on remand to "reconsider the appropriateness of consecutive sentencing and for specific findings to be made if consecutive sentencing is ordered." Marcus Johnson, slip op. at 3. Because sentencing was not raised as an issue by the co-defendant Johnson, no information regarding any applicable enhancement or mitigating factors is included in the opinion.

The state asks that this court affirm consecutive sentencing on the ground that the circumstances of the robbery indicate that the defendant is a dangerous offender with no hesitation about committing a crime in which the risk to human life is high. It asserts that the defendant "showed a significant disregard for human life by shooting his gun in the store knowing others were in the store and robbing the store after two employees were shot multiple times." Although the robbery and shooting involved in this case were extremely serious, the evidence does not show that the defendant was responsible for the aggravating circumstances. Likewise, the record does not support a finding that consecutive sentences are warranted to protect the public from the defendant. As indicated, the defendant's prior criminal convictions have been for nonviolent misdemeanor offenses. The proof indicated that he fired his weapon one time. Neither victim was injured by the shotgun. The record reflects that the victim and Abu-Hamda were shot by the high velocity weapon carried by the co-defendant Johnson. The defendant will be required to serve 100% of his twenty-year sentence for especially aggravated robbery. See Tenn. Code Ann. § 40-35-501(I)(1). Without diminishing the seriousness of these crimes, it is our view that incarceration of the defendant for twenty years is sufficient to punish the defendant and protect the public.

Accordingly, the defendant's convictions for the especially aggravated robbery and criminally negligent homicide of Abu-Hamda are affirmed. The sentences for those offenses of twenty years and two years, respectively, are also affirmed. The conviction for the especially aggravated robbery of the victim Ghannam is modified to one for aggravated assault. The cause is remanded to the trial court for sentencing on that offense. All sentences are to be served concurrently.

_____
GARY R. WADE, PRESIDING JUDGE